UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLARA CHEEKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-2091-SEP |
| | ) | |
| JON BELMAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on separate motions to dismiss Plaintiff Clara Cheeks'

Second Amended Complaint filed by Defendants Jon Belmar and St. Louis County, Missouri

(collectively, the "County Defendants") (Doc. [148]); Alex Maloy and Mark Jakob in their

individual capacities (individually, "Maloy" or "Jakob" and collectively, the "Police Officer

Defendants")[1] (Doc. [144]); and Mike Broniec, Paul Kempke, and Brock Teague in their

individual capacities (collectively, the "MSHP Defendants") (Doc. [146]).  The MSHP Defendants

also filed an alternative, supplemental motion to dismiss.  The motions are fully briefed and ready

for disposition.

For the reasons outlined below, the Court will stay Plaintiff's state law wrongful death

claims in Counts VIII and IX; deny the County Defendants' Motion to Dismiss; grant in part and

---

[1] Defendant Maloy has been incorrectly named in the complaint as "Alex Malloy."  Also, the caption of the
complaint lists Maloy and Jakob as defendants in their individual capacities only, but paragraphs 11 and 12
thereof state that Maloy and Jakob are sued in their official and individual capacities.  (Doc. [142] ¶¶ 11,
12.)  The Court previously dismissed Plaintiff's claims against Defendants Maloy and Jakob in their
official capacities as duplicative, because their former government employer, St. Louis County, Missouri,
is a defendant in this case.  *See* Mem. & Order of June 3, 2019 (Doc. [102] at 14-17) and Order of Partial
Dismissal (Doc. [103]).  The Court treats all references in the complaint to Maloy and Jakob in their
official capacities as surplusage and disregards the same.

deny in part the Police Officer Defendants' Motion to Dismiss; grant the MSHP Defendants' Motion to Dismiss; and deny as moot the MSHP Defendants' Supplemental Motion to Dismiss. In addition, on the Court's own motion, some of Plaintiff's claims against the County Defendants will be dismissed for failure to state a claim upon which relief can be granted.

## I.     Factual and Procedural Background

Plaintiff is the mother of Mikel Neil ("Decedent"), a deceased adult.  The Second Amended Complaint ("complaint") alleges that Decedent died as a result of injuries he sustained on August 10, 2018, in a motor vehicle accident caused by Defendants Alex Maloy and Mark Jakob, former St. Louis County, Missouri police officers, while acting within the scope of their employment.  The complaint alleges Decedent was driving on Airport Road in a residential area of the City of Berkeley, Missouri, when he allegedly ran a red light.  Maloy and Jacob activated their police vehicle's emergency lights and engaged in a pursuit of Decedent's vehicle at speeds in excess of 90 miles per hour.  Maloy and Jakob intentionally performed a PIT maneuver on Decedent's vehicle that caused it to crash into a tree near the road at the intersection of Airport Road and Tyndall Drive.[2]  Maloy and Jakob knew of the crash but left the scene without providing any medical treatment to the vehicle's occupants or notifying 911 or other appropriate authorities. Both occupants of the vehicle were alive and breathing immediately following the crash.

Maloy and Jakob did not return to the crash scene until approximately 45 minutes later, by which time both Decedent and his passenger were dead.  Maloy and Jakob intentionally and falsely reported the crash as a single-car accident caused by driver error.  Without conducting a meaningful investigation, the St. Louis County Police Department falsely claimed its officers were

---

[2] The complaint's reference is to a precision immobilization technique (PIT) maneuver.  *See Moore-Jones v. Quick,* 909 F.3d 983, 985 (8th Cir. 2018).  In a PIT maneuver, "the officer drives alongside the rear of the fleeing vehicle, turns, and hits the vehicle's rear end, causing it to spin and stop."  *Helseth v. Burch,* 258 F.3d 867, 869 (8th Cir. 2001) (en banc).

not involved in a pursuit; failed or refused to listen to eyewitness accounts of a police chase involving a PIT maneuver; and obtained video footage of the pursuit from security cameras but failed and refused to acknowledge that it revealed a high-speed pursuit involving its officers.

Defendants Broniec, Kempke, and Teague are certified law enforcement officers employed by the Missouri State Highway Patrol who conducted an independent investigation of the crash. Broniec and "other MSHP Command Rank Personnel" came to Plaintiff's home for a meeting to provide a report of the crash investigation and said that Defendant Belmar "made various unsolicited contacts and communications with MSHP, regarding the MSHP independent investigation." Doc. [142] ¶ 76.  With respect to these communications, the complaint also vaguely alleges:

> St. Louis County, and other Missouri Police Officials, directly communicated with the other Defendants and investigators of the matter, regarding the incident described herein.  These communications were designed to assist in the efforts of averting full liability for the conduct engaged in by law enforcement and to deny Plaintiff full access to the Court, which is a constitutionally protected right.

*Id.* ¶ 74.

The complaint alleges that new and different accident reconstruction software was "inexplicably" purchased to investigate the crash.  The electronic accident reconstruction report created by the "Defendants" relied mostly on user input by "MSHP personnel conducting the investigation," although they were not personally on the scene and did not witness the accident. *Id.* ¶ 77.  At the meeting at Plaintiff's home, "MSHP personnel" stated the pursuing officers would have seen the crash, which contradicts the reports of "St. Louis County [and] official statements regarding the high-speed pursuit and wrongful death scenario."  *Id.*[3]

---

[3] The complaint is carelessly written despite being the third filed in this matter.  It often fails to allege which Defendant made a statement or took an action, and instead refers to unspecified "Defendants" or

On November 26, 2018, two of Decedent's surviving daughters filed a wrongful death petition for damages in the Circuit Court of St. Louis County, Missouri, claiming damages arising out of their father's death in the vehicle accident that occurred on August 10, 2018.  *See Neil v. St. Louis County, Mo.,* No. 18SL-CC04457 (21st Jud. Cir., State of Missouri) (the "state court wrongful death action").[4]  The named defendants in that case are St. Louis County, Mark Jakob, and Alex Maloy.  The five-count wrongful death Petition asserts claims of negligence, recklessness, and negligence per se against Maloy; failure to render aid against Maloy and Jakob; and respondeat superior against St. Louis County.  Doc. [153-1].  On January 25, 2019, four other children of the Decedent moved to intervene as of right in the state court wrongful death action, and the motion to intervene was granted January 29, 2019.

_____

even "Defendant's."  *See*, *e.g.*, ¶¶ 28, 29, 35, 40, 41, 62, 76, 78.  The complaint refers to unspecified multiple persons who may or may not be defendants, *e.g.*, "the officers; the superior authorities as well as, all investigators of this matter," *id.* ¶ 54; and "St. Louis County authorities and superiors as well as all Defendants, investigators and superiors," *id.* ¶ 62; and uses capital letters to refer to groups of persons that are nowhere defined in the complaint, *e.g.*, "St. Louis County Police Officials," *id.* ¶ 63; "St. Louis County Police," *id.* ¶¶ 64-67, 69; "other Missouri Police Officials," *id.* ¶ 74; "MSHP Command Rank Personnel," *id.* ¶ 75; and "MSHP personnel," *id.* ¶ 77.  Similar vague and unclear references continue throughout the complaint.  The complaint includes numerous references to "Plaintiff" when the context indicates the clear intent was to refer to "Decedent," *e.g.*, *id.* ¶¶ 82, 85, 88-91, 99-100, 102-04, 142-43, 148; includes multiple causes of action based on four constitutional provisions in a single count without adequately identifying the nature and constitutional basis of each cause of action, *id.* ¶¶ 79-93; and is replete with grammar and usage errors, incomplete sentences, and some largely incomprehensible sentences.  *See, e.g., id.* ¶ 77 ("However, inexplicably, purchased a different software package to complete the accident investigation of this particular, law enforcement involved high speed pursuit, wrongful death scenario."); *id.* ¶ 99 ("At each of these moments, of deployment efforts the pit and others, each overly aggressive and reckless driving behavior and pursuit misconduct, Plaintiff's [sic] Fourth Amendment rights to be free and secure from unreasonable and excessive force, as applied to the states by the Fourteenth Amendment, were fully implicated.").  These deficiencies do a disservice to Plaintiff by making more difficult for the Court to interpret the complaint's allegations.

[4] The Court takes judicial notice of the state court record of the wrongful death action as shown on Missouri Case.net.  *See Great Plains Trust Co. v. Union Pacific R.R. Co*., 492 F.3d 986, 996 (8th Cir. 2007) (courts "may take judicial notice of proceedings in other courts that relate to matters at issue.").  A court may take judicial notice of matters of public record, such as court records, without converting a motion to dismiss into a motion for summary judgment.  *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007).

4

Meanwhile, Plaintiff filed the instant action on December 17, 2018, asserting federal claims under 42 U.S.C. § 1983, and supplemental state law wrongful death claims under Missouri law against Defendants Belmar, St. Louis County, Jakob, Maloy, and the Missouri State Highway Patrol ("MSHP"). The Court dismissed Plaintiff's claims against the MSHP on the basis of Eleventh Amendment immunity and ordered Plaintiff to file an amended complaint. Docs. [38], [39]. Plaintiff filed a First Amended Complaint that, among other things, added Defendants Broniec, Kempke, and Teague. Doc. [40]. The Court dismissed Plaintiff's claims against Defendants Maloy and Jakob in their official capacities as duplicative of the claims against St. Louis County. Docs. [102], [103]. The Court quashed service of process on Defendants Broniec and Kempke for insufficiency of process and insufficiency of service of process under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). Doc. [107]. Several Defendants filed motions to dismiss the First Amended Complaint, Plaintiff moved for leave to file a Second Amended Complaint, and Defendant Teague moved to strike Plaintiff's motion for leave. The Court denied the motion to strike, granted Plaintiff leave to amend the complaint, and denied the motions to dismiss without prejudice. Doc. [140]. Plaintiff filed the current complaint on October 15, 2019, and Defendants filed the instant motions to dismiss in response.

Plaintiff moved to intervene as of right in the state court wrongful death action on September 12, 2019, and the state court granted the motion on October 23, 2019. Plaintiff filed a "Proposed Wrongful Death Petition for Damages" in the wrongful death action on November 22, 2019. The state court record indicates significant discovery has taken place in the action.

## II.     Legal Standard

"To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Pre-Filled Propane*

5

*Tank Antitrust Litig.,* 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting *Ashcroft v. Iqbal,*

556 U.S. 662, 678 (2009)).  In reviewing a motion to dismiss for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6), the Court accepts all factual allegations as true and

construes all reasonable inferences in the light most favorable to the nonmoving party.  *Usenko v.*

*MEMC LLC,* 926 F.3d 468, 472 (8th Cir.), *cert. denied,* 140 S. Ct. 607 (2019).  The Court need

not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts.

*Waters v. Madson,* 921 F.3d 725, 734 (8th Cir. 2019).  The complaint "must allege more than

'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that

is plausible on its face.'"  *K.T. v. Culver-Stockton Coll.,* 865 F.3d 1054, 1057 (8th Cir. 2017)

(alteration in original) (quoting *Iqbal,* 556 U.S. at 678) (internal quotation marks omitted).  A

facially plausible claim is one "that allows the court to draw [a] reasonable inference that the

defendant is liable for the misconduct alleged."  *Wilson v. Ark. Dep't of Human Servs.,* 850 F.3d

368, 371 (8th Cir. 2017) (internal quotation omitted).  This "standard asks for more than a sheer

possibility that a defendant has acted unlawfully, or more than a mere possibility of misconduct."

*Id.* (cleaned up).[5]

     Courts generally consider only the complaint's allegations in determining whether to grant

a Rule 12(b)(6) motion, but may also consider "matters incorporated by reference or integral to the

claim, items subject to judicial notice, matters of public record, orders, items appearing in the

---

[5] Although Plaintiff's opposition memoranda cite the *Twombly* standard, she also asserts that a "motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."  Doc. [159] at 3; Doc. [162] at 2-3; Doc. [163] at 2-3 (citing *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986)).  The Supreme Court's holding in *Twombly* abrogated the traditional Rule 12(b)(6) "no set of facts" standard of *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008).  Plaintiff's citation to the pre-*Twombly* "no set of facts" standard is therefore erroneous.

record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" without converting a motion to dismiss to one for summary judgment. *Miller v. Redwood Toxicology Lab, Inc.,* 688 F.3d 928, 931 & n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

### III.     Motions to Dismiss Based on Abstention and Claim Splitting Grounds

The County Defendants move to dismiss Plaintiff's complaint in its entirety on the basis that she has impermissibly split her claims between two courts with concurrent jurisdiction—this Court and the St. Louis County Circuit Court.[6]  The County Defendants argue this action and the state court wrongful death action are parallel because they arise out of the same incident and both seek monetary damages based on allegations that Defendants are liable for Decedent's death in the accident of August 10, 2018, and that this suit should therefore be dismissed under the abstention doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818-20 (1976).  They argue that Plaintiff's federal § 1983 claims are inextricably intertwined with her state law claims and the state court is capable of addressing those claims, as it has concurrent jurisdiction over § 1983 claims.

The Police Officer Defendants argue that Plaintiff's state law wrongful death claims in Counts VIII and IX must be dismissed under Rule 12(b)(6) because "only one action may be brought . . . against any one defendant for the death of any one person" under the Missouri wrongful death statute, Mo. Rev. Stat. § 537.080(2).  These Defendants also argue Plaintiff's entire complaint should be dismissed for improper claim splitting because she intervened in the state court wrongful death action and assert this Court should abstain under *Colorado River*.  Doc.

---

[6] This is the sole basis for the County Defendants' Motion to Dismiss.  It does not otherwise address any of Plaintiff's claims.

[152] at 22-24.  In the alternative, the Police Officer Defendants contend the complaint should be dismissed under the first-filed rule.

The Court will first address the County Defendants and Police Officer Defendants' arguments that seek dismissal of Plaintiff's complaint in its entirety.  Neither group of Defendants has developed its claim splitting argument, which is presumably based on Missouri law, but instead focus their arguments on abstention and the first-filed rule.

A.  *Colorado River* Abstention is Not Appropriate

"[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292 (2005).  The Court's analysis begins with the principle that federal courts have a "'virtually unflagging obligation . . . to exercise jurisdiction given to them, even when there is a pending state court action involving the same subject matter.'"  *Fru-Con Const. Corp. v. Controlled Air, Inc.,* 574 F.3d 527, 535 (8th Cir. 2009) (quoting *Mountain Pure, LLC v. Turner Holdings, LLC,* 439 F.3d 920, 926 (8th Cir. 2006)).  Only when the state and federal proceedings are "parallel" and "exceptional circumstances" exist may a federal court abstain and divest itself of jurisdiction.  *Id.* (quoting *Colorado River,* 424 U.S. at 817-18).

The Eighth Circuit applies a high bar for when state and federal proceedings are "parallel" for purposes of determining whether an abstention analysis under *Colorado River* is necessary.  *See United States v. Rice,* 605 F.3d 473, 476 (8th Cir. 2010).  "The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient."  *Fru-Con,* 574 F.3d at 535 (cited case omitted).  For cases to be considered parallel, "a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court."  *Rice,* 605 F.3d at 476 (quoting *Fru-Con,* 574 F.3d at

8

535).  "When any doubt exists as to the parallel nature of concurrent state and federal proceedings, the district court cannot utilize *Colorado River* to refuse its jurisdiction."  *Cottrell v. Duke,* 738 F.3d 1238, 1245 (8th Cir. 2013) (citing *Fru-Con,* 574 F.3d at 535).

With these principles in mind, the Court finds that the instant case and the state court wrongful death action are not parallel for purposes of *Colorado River* abstention, because there is not a substantial likelihood that the wrongful death action will fully dispose of the claims presented by Plaintiff in this Court.

This case and the state court wrongful death action have substantially different parties. The state suit is brought by seven plaintiffs, including Plaintiff Cheeks, and the defendants are Jakob, Maloy, and St. Louis County.  Federal court Defendants Belmar, Broniec, Kempke, and Teague are not parties to the state court wrongful death action, and Decedent's six children are not parties in the federal case.  While some issues in each proceeding may be related because they arise from the vehicle accident that killed Decedent, and there is overlap with respect to state law negligence and negligence per se claims, the primary claims asserted in the federal case are based on alleged violations of Plaintiff and Decedent's constitutional rights that are not at issue in the state court wrongful death action.  The two petitions in the wrongful death action, filed by the original plaintiffs and intervenor Plaintiff Cheeks, assert the same state law claims under the Missouri Wrongful Death statute for negligence, recklessness, negligence per se, failure to render aid, and respondeat superior.  The federal § 1983 claims in this case have not been asserted in the wrongful death action and are based on different sources of law, including the Fourth and Fourteenth Amendments to the United States Constitution.  The federal claims include additional factual allegations and involve different elements and sources of proof than the state law claims. In addition, the fact that Plaintiff *could* assert § 1983 claims in state court or join additional parties in this case is not relevant.  The determination of whether state and federal proceedings are

parallel for purposes of *Colorado River* abstention turns on matters "as they currently exist, not as they could be modified." *Fru-Con,* 574 F.3d at 535.

The Court finds the state wrongful death action and the federal case are not substantially similar.  The state wrongful death action will not fully dispose of Plaintiff's federal civil rights claims in this case, and therefore the two cases are not "parallel," as that term is defined by the Eighth Circuit.  As a result, the Court does not analyze whether "exceptional circumstances" warranting abstention exist, and finds that it would be improper to abstain from exercising jurisdiction over this matter.  The motions to dismiss based on *Colorado River* are denied.

B.  <u>The First-Filed Rule is Inapplicable</u>

When *parallel* litigation has been instituted in separate courts, the first-filed rule gives priority to the party who first establishes jurisdiction in order to conserve judicial resources and avoid conflicting rulings, as a matter of federal comity.  *Keymer v. Mgmt. Recruiters Int'l, Inc.,* 169 F.3d 501, 503 n.2 (8th Cir. 1999) (citing *Nw. Airlines, Inc. v. Am. Airlines, Inc.,* 989 F.2d 1002, 1004-05 (8th Cir. 1993)).  The first-filed rule is inapplicable here because the state and federal cases at issue are not parallel, as discussed above.[7]  Because a prerequisite to application

---

[7] There is a division among federal courts regarding whether the first-filed rule may apply to concurrent cases filed in federal and state court, as opposed to two federal courts, *see Central States Indus. Supply, Inc. v. McCullough*, 218 F. Supp. 2d 1073, 1092 (N.D. Iowa 2002) (describing a "split among the federal courts" and collecting cases); but an "examination of legal precedent among the federal courts reveals overwhelming support for the application of the first-filed rule to concurrent actions only as between federal courts," *id.* at 1087 (collecting cases).  The better view is that district courts should apply the *Colorado River* abstention doctrine when concurrent actions involve a state court and federal court, as the first-filed rule does not adequately recognize federal courts' "virtually unflagging" obligation to exercise their jurisdiction.  *See Central States,* 218 F. Supp. 2d at 1084 (explaining the difference in general approach between state-federal concurrent jurisdiction "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them") (citations omitted).  The Eighth Circuit has not squarely addressed the question but has indicated it considers the first-filed rule applicable only where the two proceedings at issue were filed in different federal courts.  In *Smart v. Sunshine Potato Flakes, L.L.C.,* the Eighth Circuit stated the "first filed" doctrine is "not a rule" but rather a "factor," and "is often dominant in determining which federal court should proceed when the parties . . . have filed [cases] in different district courts."  307 F.3d 684, 687 (8th Cir. 2002).  In determining if "a federal court should defer to a pending suit in state court," however, "the order in which jurisdiction was obtained, while still a

of the first-filed rule is not met, the Court will not dismiss or stay this matter on the basis of the first-filed rule.  This aspect of the Police Officer Defendants' motion to dismiss is denied.

C.  <u>Plaintiff's State Law Wrongful Death Claims Cannot Proceed in Two Courts</u>

The Court now turns to the Police Officer Defendants' argument that Plaintiff's state law wrongful death claims in Counts VIII and IX must be dismissed under Rule 12(b)(6) because, under Missouri law, "[o]nly one action may be brought . . . against any one defendant for the death of any one person."  Mo. Rev. Stat. § 537.080(2).  Plaintiff responds that she moved to intervene in the state court wrongful death action "[i]n an abundance of caution to protect her claims" as a "procedural safeguard" but asserts she is "entitled to have her claims heard by this Court."  Doc. [163] at 13.

The Police Officer Defendants are correct that only one action may be brought for the wrongful death of Decedent.  The Missouri Supreme Court has explained that "[i]n all cases, only one action may be brought against any one defendant for the death of any one person."  *Call v. Heard,* 925 S.W.2d 840, 850 (Mo. 1996) (en banc) (citing Mo. Rev. Stat. § 537.080(2)).  The wrongful death "statute creates but one indivisible cause of action which remains the same whether enforceable by the surviving spouse, by the minor child or children, or by the others named in the statute," *Nelms v. Bright,* 299 S.W.2d 483, 487 (Mo. 1957) (en banc), "regardless of the number of claimants able to join in that recovery."  *Lang v. Nationwide Mut. Fire Ins. Co.,* 970 S.W.2d 828, 833 (Mo. Ct. App. 1998).

The Police Officer Defendants do not cite any legal authority, however, to support their argument that Plaintiff's wrongful death claims are properly dismissed under Rule 12(b)(6)

---

relevant factor in applying the abstention doctrine, is far less apt to be determinative because of the federal court's 'virtually unflagging obligation' to exercise its jurisdiction."  *Id.* (quoting *Colorado River*, 424 U.S. at 817-18).

because of § 537.080(2)'s "one action" rule.  Defendants' bare argument offers the Court no guidance as to the proper disposition of Plaintiff's wrongful death claims in this action.

Plaintiff's wrongful death claims in Counts VIII and IX overlap with her wrongful death claims in state court, and Plaintiff cannot assert these claims in two separate actions.  Mo. Rev. Stat. § 537.080(2).  Principles of comity and prudent judicial administration weigh strongly in favor of resolving the wrongful death claims in state court, where all of the claimants are joined and discovery has been ongoing.  Consequently, the Court concludes that Plaintiff must assert her wrongful death claims in state court only.

That being said, the Court is mindful of its "virtually unflagging obligation" to exercise jurisdiction "even when there is a pending state court action involving the same subject matter." *Fru-Con, Inc.,* 574 F.3d at 535 (quoted case omitted).  Even in situations where abstention is appropriate, a "district court's authority to dismiss is circumscribed in cases where the plaintiff seeks purely legal relief, such as damages."  *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.,* 868 F.3d 661, 665 (8th Cir. 2017).  The Supreme Court has "applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether."  *Id.* (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 719 (1996)) (emphasis in original).  Thus, outright dismissal of the claims is not appropriate.

Plaintiff's wrongful death claims in Count VIII and IX seek money damages, and her claims might not be resolved in the state court wrongful death action.  As a result, it is appropriate to stay rather than dismiss Counts VIII and IX.  *Cf. Ritchie*, 868 F.3d at 666 ("Where there is potential that [Plaintiff's] claims will not be resolved in the bankruptcy proceeding, we see no reason why the court should have greater authority to dismiss an action for damages here than in a case involving parallel state court proceedings and *Burford* or *Younger* abstention.").  The Court

12

will therefore stay Counts VIII and IX, and these counts may be dismissed on the motion of any party after judgment is entered in the state court wrongful death action.

The Court now addresses the motions to dismiss directed to various counts in the complaint.

## IV.  Police Officer Defendants' Motion to Dismiss

The Police Officer Defendants move to dismiss Plaintiff's claims against them in Counts I, II, IV, and V for failure to state a claim and on the basis of qualified immunity.

### A.  Qualified Immunity Principles

"Qualified immunity shields officials from civil liability in § 1983 actions when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Morgan v. Robinson,* 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).  "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct."  *Id.* (quoting *Nord v. Walsh Cnty.,* 757 F.3d 734, 738 (8th Cir. 2014)).  "Unless both of these questions are answered affirmatively, an appellant is entitled to qualified immunity."  *Id.* (quoting *Nord,* 757 F.3d at 738).  "And, courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'"  *Id.* (quoting *Nord,* 757 F.3d at 738-39).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Id.* (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012)).  To defeat a defendant's claim of qualified immunity, a plaintiff "bears the burden of showing that the facts alleged, construed in the light most favorable

to [her], demonstrate the violation of a constitutional right that was clearly established at the time of the violation." *Church v. Anderson,* 898 F.3d 830, 832 (8th Cir. 2018).

The Supreme Court recently reiterated the "longstanding principle that clearly established law should not be defined at a high level of generality," but must instead "be particularized to the facts of the case." *White v. Pauly,* __ U.S. __, 137 S. Ct. 548, 552 (2017) (per curiam) (internal quotation marks omitted).  At the time of the incident at issue, the "legal principle [must] clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *District of Columbia v. Wesby,* __ U.S __, 138 S. Ct. 577, 590 (2018) (internal quotation marks and citation omitted).  Accordingly, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna,* 136 S. Ct. 306, 308 (2015) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

The doctrine of qualified immunity requires an individualized analysis as to each officer, *Roberts v. City of Omaha,* 723 F.3d 966, 974 (8th Cir. 2013), because a person "may be held personally liable for a constitutional violation only if his own conduct violated a clearly established constitutional right." *Baribeau v. City of Minneapolis,* 596 F.3d 465, 482 (8th Cir. 2010).  That said, the complaint in this case often does not make allegations against specific defendants by name and instead refers to "defendants" without indicating which or how many defendants are intended.  Thus, the Court assumes for purposes of this opinion that the complaint makes the same allegations against all defendants named in a particular count, unless the complaint specifies otherwise.

Finally, "defendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the

14

complaint.'"  *Carter v. Huterson,* 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee,* 394 F.3d 1012, 1015 (8th Cir. 2005)).

B.  Police Officer Defendants' Motion to Dismiss Count I

The Court first addresses the Police Officer Defendants' arguments concerning the multiple causes of action included in Count I.  Count I is titled "4th 5th 8th and 14th Violations of the U.S. Constitution Actionable Pursuant to 42 U.S.C. § 1983 Due Process, Right to Life and Bodily Integrity/ Unreasonable Seizure/ Cruel and Unusual Punishment Against All St. Louis County Defendants."  Doc. [142] at 13.  Defendants Maloy and Jakob move to dismiss Count I on the grounds that qualified immunity bars all of the causes of action asserted against them; Plaintiff fails to allege facts indicating the alleged seizure was unreasonable; the Fifth Amendment's Due Process Clause is inapplicable; the Eighth Amendment's Cruel and Unusual Punishment Clause is inapplicable; and the Fourteenth Amendment's Substantive Due Process Clause is not the appropriate vehicle for Plaintiff's claims.  The Court examines each argument in turn.

1.  *Fourth Amendment—Unreasonable Seizure*

Defendants Maloy and Jakob move to dismiss Plaintiff's Fourth Amendment unreasonable seizure claim for failure to state a claim and on the basis of qualified immunity.  The Police Officer Defendants admit Plaintiff has sufficiently pleaded that a seizure of Decedent occurred but argue Plaintiff can only state a claim under § 1983 if the seizure was unreasonable, citing *Brower v. County of Inyo,* 489 U.S. 593, 599 (1989), and under Eighth Circuit precedent a traffic violation provides probable cause for a traffic stop, citing *United States v. Frasher,* 632 F.3d 450, 453 (8th Cir. 2011).

Maloy and Jakob argue that the complaint fails to plead facts, rather than conclusory allegations, showing that the seizure was unreasonable.  They claim that the complaint acknowledges they were acting with the belief they had probable cause to seize Decedent due to a

15

traffic violation, citing Doc. [142] ¶¶ 34, 46, 82, 98.  They also assert that the law was not clearly established at the time of the incident that their alleged conduct violated the Fourth Amendment if they had probable cause to make a traffic stop.

Plaintiff responds that "[a]t this stage of the case, [she] is not required to give every detail establishing how the decedent's seizure was unreasonable."  Doc. [163] at 3.  Plaintiff denies conceding that Maloy and Jakob believed they were acting with probable cause and asserts the "facts refute this and show that Maloy and Jakob knew their actions violated the law—for example, they fled the scene and also lied about the circumstances surrounding it."  *Id.*  Plaintiff argues that a jury could infer from these facts that Maloy and Jakob did not think they had probable cause.  She claims that they are not entitled to qualified immunity because they did not have probable cause to stop Decedent, and they knew they could not seize a citizen unless probable cause existed.  Plaintiff also argues Maloy and Jakob are not entitled to qualified immunity because they intentionally caused Decedent's death, left the accident scene, and failed to provide emergency care, violating Decedent's clearly established constitutional rights.

As stated above, to determine whether Maloy and Jakob are entitled to qualified immunity, the Court engages in a two-pronged analysis to determine "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct."  *Morgan,* 920 F.3d at 523 (quoting *Pearson,* 555 U.S. at 231).  Because an official is entitled to qualified immunity unless both prongs are satisfied, the analysis ends if either of the two prongs is not met.  *Id.* (quoting *Nord,* 757 F.3d at 738).

The Court first considers whether Plaintiff has stated a plausible claim for a constitutional violation for unreasonable seizure.  To do so, Plaintiff must plead sufficient facts to plausibly allege that (1) a seizure occurred, and (2) it was unreasonable.  *McCoy v. City of Monticello,* 342

16

F.3d 842, 846 (8th Cir. 2003).  As stated above, Maloy and Jakob concede that the complaint

sufficiently alleges that a seizure occurred.  "[A] Fourth Amendment seizure [occurs] . . . when

there is a governmental termination of freedom of movement through means intentionally

applied."  *Brower,* 489 U.S. at 596-97 (emphasis omitted).

     A seizure alone does not establish liability under § 1983.  A seizure must be unreasonable

to rise to the level of a constitutional violation.  *Id.* at 599.  "Reasonableness of a seizure is

determined by the totality of the circumstances and must be judged from the viewpoint of a

reasonable officer on the scene, irrespective of the officer's underlying intent or motivation."

*McCoy,* 342 F.3d at 848 (citing *Graham v. Connor,* 490 U.S. 386, 396-97 (1989)).  "The

reasonableness of force depends on the facts and circumstances of each case accounting for (1) the

severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of

the officer or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by

flight."  *Id.* (brackets and quotation marks omitted) (quoting *Graham,* 490 U.S. at 396).  "Whether

an officer's use of force is reasonable is 'judged from the perspective of a reasonable officer on

the scene, rather than with the 20/20 vision of hindsight."  *Id.* (quoting *Graham,* 490 U.S. at 396).

"The calculus of reasonableness must embody allowance for the fact that police officers are often

forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly

evolving–about the amount of force that is necessary in a particular situation."  *Graham,* 490 U.S.

at 396-97.

     The Eighth Circuit has explained the requirements for a reasonable seizure in the context

of a traffic stop as follows:

> To constitute a reasonable seizure, a traffic stop must be supported
> by, at a minimum, "a reasonable, articulable suspicion that criminal
> activity" is occurring.  A traffic violation, however minor, provides
> probable cause sufficient to satisfy the constitutional reasonableness
> requirement.  Once an officer has probable cause, the stop is

> objectively reasonable and any ulterior motivation on the officer's
> part is irrelevant.  Similarly, it is irrelevant that the officer would
> have ignored the violation but for his ulterior motive.

*Frasher,* 632 F.3d at 453 (internal quotations and citations omitted).  Here, the complaint alleges in pertinent part that "[Decedent] allegedly violated a red electric signal," Doc. [142] ¶ 46, Defendants Maloy and Jakob "activated their emergency lights and began a pursuit of [Decedent]," *id.* ¶ 47, and engaged in a "high-speed chase" in a "primarily residential" area at "speeds in excess of 90 miles per hour" where the posted speed limit was "between 35 and 40 Miles Per Hour."  *Id.* ¶¶ 50-52.

The Court assumes for purposes of this opinion that Decedent did not violate a red traffic signal, as the complaint does not allege this as a fact and instead asserts only that Decedent was "alleged" to have violated a signal.[8]  Still, the complaint's factual allegations, taken as true, show that Maloy and Jakob observed Decedent commit two traffic violations:  failure to yield to an emergency vehicle and speeding.  The face of the complaint therefore establishes that Maloy and Jakob had sufficient probable cause to justify a traffic stop of Decedent, satisfying the constitutional reasonableness requirement.  *See Frasher,* 632 F.3d at 453.  The complaint's allegations concerning Maloy and Jakob's post-crash conduct—e.g., failing to provide medical care, fleeing the accident scene, and filing a false report—while reprehensible, are not relevant to the Fourth Amendment probable cause analysis.  "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant."  *Id.* (citation and quotation omitted).  "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  *Whren v. United States,* 517 U.S. 806, 813 (1996).

---

[8] Elsewhere the complaint alleges, "In their pursuit of a person, whom was *alleged* to have committed a traffic infraction, the Defendants acted unreasonably and with excessive force under the circumstances as to Mr. Neil."  Doc. [142] ¶ 83 (emphasis added).

The Court concludes Plaintiff has not met her burden to show that the facts alleged, construed in the light most favorable to her, demonstrate a violation of the Fourth Amendment right against unreasonable seizure.  Defendants Maloy and Jakob have established they are entitled to dismissal of Plaintiff's unreasonable seizure claim in Count I on the merits and on the basis of qualified immunity.

### 2.  *Fifth Amendment—Due Process*

Defendants Maloy and Jakob move to dismiss Plaintiff's claims in Count I to the extent they are based on the Fifth Amendment's Due Process Clause.  Defendants assert that they are entitled to dismissal both for failure to state a claim and on the basis of qualified immunity because the Fifth Amendment applies only to the federal government or federal entities, not the states, citing *Barnes v. City of Omaha,* 574 F.3d 1003, 1005 n.2 (8th Cir. 2009), and the complaint contains no factual allegations concerning any action by the federal government or a federal entity.  Doc. [152] at 7-8.  Plaintiff does not respond to this argument.

Defendants' arguments are well-taken.  The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, *see Barnes, supra* (citing cases), and not to state and county officers and actions, as alleged in the complaint.  *Jackson v. Stair,* 944 F.3d 704, 709 (8th Cir. 2019).  It appears from the face of the complaint that Plaintiff cannot assert a constitutional violation based on the Fifth Amendment's Due Process Clause.  Having failed to make out a violation of a constitutional right, the claim also fails to satisfy the first prong of the qualified immunity analysis.  *See Morgan,* 920 F.3d at 523.  Defendants Maloy and Jakob have therefore established that they are entitled to dismissal of Plaintiff's Fifth Amendment claims in Count I both for failure to state a claim and on the basis of qualified immunity.

3.   *Eighth Amendment—Cruel and Unusual Punishment*

Defendants Maloy and Jakob move to dismiss Plaintiff's claims in Count I that are based on the Eighth Amendment's Cruel and Unusual Punishment Clause.  Defendants argue they are entitled to dismissal, both for failure to state a claim upon which relief can be granted and on the basis of qualified immunity, because the Eighth Amendment's guarantees are implicated only following a formal adjudication of guilt, citing *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979), and the complaint does not allege there was a formal adjudication of Decedent's guilt.  Doc. [152] at 8-9.

Plaintiff responds that Maloy and Jakob "applied cruel and unusual punishment against decedent" by using unreasonable force in the high-speed chase and PIT maneuver, lying about the incident, and intentionally refusing to provide Decedent medical attention after causing the crash.  Doc. [163] at 5.  Plaintiff argues "that by causing a high speed chase and the PIT maneuver, these officers had already taken it upon themselves to determine the guilt of decedent and that by causing the car accident he was a prisoner for purposes of the Eighth Amendment."  *Id.*

Plaintiff's argument is without merit.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment on those persons who have been convicted of crimes, *Wilson v. Seiter,* 501 U.S. 294, 297 (1991), and "applies only to convicted prisoners[,]" *Jackson,* 944 F.3d at 709 (citing *Hott v. Hennepin Cnty.,* 260 F.3d 901, 905 (8th Cir. 2001)).  The complaint does not allege that Decedent was convicted of a crime and thereafter subjected to cruel and unusual punishment.  Therefore, it does not successfully make out an Eighth Amendment claim, and further, it cannot satisfy the first prong of the Court's qualified immunity analysis.  *See Morgan,* 920 F.3d at 523.

20

Accordingly, Defendants Maloy and Jakob have established that they are entitled to dismissal of Plaintiff's Eighth Amendment claims in Count I, both for failure to state a claim and on the basis of qualified immunity.

4.   *Fourteenth Amendment Substantive Due Process—Right to Life/Right to Bodily Integrity*

Defendants Maloy and Jakob move to dismiss Plaintiff's claims in Count I to the extent that they assert a violation of Decedent's right to life and bodily integrity based on the Fourteenth Amendment's Substantive Due Process Clause.  Defendants claim they are entitled to dismissal for failure to state a claim and on the basis of qualified immunity because this claim is based on the same facts that underlie Plaintiff's Fourth Amendment causes of action for unreasonable seizure and excessive force.  Maloy and Jakob state that a Fourth Amendment analysis must apply, to the exclusion of substantive due process, as it represents a more definite constitutional provision establishing the appropriate analytical framework for Plaintiff's claims, citing *County of Sacramento v. Lewis,* 523 U.S. 833, 841 (1998), and *Graham,* 490 U.S. at 395.  Doc. [152] at 9-11.

Plaintiff's opposition does not address *Lewis* or *Graham*.  Instead, Plaintiff asserts the motion should be denied because the Fourteenth Amendment's Substantive Due Process Clause is the proper vehicle for a claim that a police cover-up prevented a person who has been wronged from vindicating her rights,[9] and that she has sufficiently pleaded that she is being denied

_____

[9] In support of this statement, Plaintiff cites an unpublished Third Circuit decision, *Washington v. Hanshaw*, 552 F. App'x 169 (3d Cir. 2014).  This section of her opposition also cites a Second Circuit decision and district court decisions from Colorado, Illinois, and Indiana, but no Eighth Circuit precedent. Doc. [163] at 6-7.  This is consistent with Plaintiff's opposition memoranda in general, which frequently cite case law from other circuits and out-of-circuit district court opinions.  These citations offer little support for Plaintiff's arguments.  The Eighth Circuit's holdings bind all district courts in this Circuit, and this Court must follow those holdings until they are reversed by the Eighth Circuit en banc or the United States Supreme Court.  *BPS Guard Servs. v. NLRB,* 942 F.2d 519, 524 (8th Cir. 1991).  As a general rule, counsel should cite Eighth Circuit precedent to the exclusion of out-of-circuit decisions.  Further, district

meaningful access to the courts as a result of Maloy and Jakob's actions.  Doc. [163] at 6-7.
Plaintiff states that she has "specifically plead[ed] that Defendants' coverup and sham
investigation ha[ve] denied her meaningful access to the Courts—particularly related to her claim
for the wrongful death of decedent," because she pleads facts that Defendants failed to engage in a
proper investigation regarding her son's death, failed to properly interview witnesses, tampered
with evidence, and failed to stop or bring charges against fellow officers they knew or should have
known were violating her rights.  *Id.* at 6.

Plaintiff's arguments confuse her substantive due process right to life and bodily integrity
claim in Count I with a claim for denial of access to the courts.  The Court cannot find that Count I
contains any allegation of denial of access to the courts.  *See* Doc. [142] ¶¶ 82-87.  Count I does
not include any mention of an underlying claim that has been impeded, nor even of the allegations
Plaintiff suggests would support such a claim:  failure to engage in a proper investigation, failure
to interview witnesses, or tampering with evidence.[10]

The Police Officer Defendants are correct that if "a constitutional claim is covered by a
specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be
analyzed under the standard appropriate to that specific provision, not under the rubric of
substantive due process."  *Lewis,* 523 U.S. at 842.  In *Graham,* the Supreme Court held that "*all*
claims that law enforcement officers have used excessive force—deadly or not—in the course of
an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the

---

court opinions from within the Eighth Circuit may be instructive or persuasive, though they are not binding
on this Court, but out-of-circuit district court opinions normally warrant little consideration.

[10] Count IV of the complaint asserts claims for civil conspiracy to deny Plaintiff access to the courts under
42 U.S.C. §§ 1983, 1985, and 1986.  As discussed below, though, Plaintiff fails to state a claim in Count IV
for conspiracy to deny her access to the courts because she does not plead facts sufficient to establish an
underlying denial of access to the courts.  *See infra* at Part IV.D.2.  Thus, even if Count I did include an
allegation of denial of access to the courts, it would be subject to dismissal for failure to state a claim.

Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  490 U.S. at 395.  Under *Lewis* and *Graham*, there can be no substantive due process claim where the claim is also covered by the Fourth Amendment.

That is the case here.  The complaint alleges that Maloy and Jakob engaged in a pursuit of Decedent's vehicle and *intentionally* applied a PIT maneuver to stop his vehicle.  Doc. [142] ¶ 53.  A Fourth Amendment seizure occurs only "when there is a governmental termination of freedom of movement through *means intentionally applied*."  *Brower*, 489 U.S. at 596-97 (emphasis in original).  Plaintiff alleges Maloy and Jakob intentionally seized Decedent by using a PIT maneuver.  The Fourth Amendment covers this conduct.

Plaintiff cannot assert a constitutional violation based on the Fourteenth Amendment's Substantive Due Process Clause for a right to life and bodily integrity claim arising out of the pursuit and PIT maneuver because there is a more definite constitutional provision establishing the appropriate analytical framework for this claim.  Thus, Defendants Maloy and Jakob have established they are entitled to dismissal of this claim in Count I, both for failure to state a claim and on the basis of qualified immunity.  *See Morgan,* 920 F.3d at 523 (noting that the first step in qualified immunity inquiry is "whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right") (citation omitted).

### 5.  *Failure to Provide Emergency Medical Care*

Count I of the complaint asserts a claim based on Defendants Maloy and Jakob's alleged failure to provide or call for emergency medical care for Decedent following the crash, but it does not specify the constitutional basis for the claim.  Doc. [142] ¶¶ 56-62, 86.  In pertinent part, the complaint alleges the Defendants' failure to provide medical care was "malicious, deliberately indifferent, constitutes an intent to harm, was an administration of unconstitutional cruel and unusual punishment . . . and may have insured the death of plaintiff [sic]."  *Id. ¶* 86.

23

The Police Officer Defendants' Motion to Dismiss and Memorandum in Support do not mention Count I's claim for failure to provide medical care, so it is not before the Court for determination.  Because it was mentioned in the parties' briefing in connection with some claims that will be dismissed pursuant to this Order, the Court feels the need to clarify the status of the failure to provide medical care claim in light of its other rulings.

Like the complaint, Plaintiff's Opposition to the Police Officer Defendants' Motion to Dismiss unhelpfully fails to specify a single basis for her failure to provide medical care claim. Plaintiff discusses the alleged failure to provide medical care in portions of her Opposition concerning her Fourth Amendment unreasonable seizure and Eighth Amendment claims, but in both of those contexts, she situates the right within Due Process Clause jurisprudence and cites the "deliberate indifference" standard applied by courts to such claims when raised under that clause. *See* Doc. [163] at 4-6 (citing *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016); *Preyor v. City of Ferndale*, 248 Fed. Appx. 636, 2007 U.S. App. LEXIS 21607 at 5 (6th Cir. Sept. 5 2007).

In their Reply, the Police Officer Defendants state only that: "Though the deliberate indifference standard of the Eighth Amendment may govern, the Eighth Amendment itself is inapplicable to decedent, as explained in Defendants' Memorandum in Support[.]"  Doc. [170] at 4.  Defendants are correct that Plaintiff cannot base a failure to provide medical care claim on the Eighth Amendment, for the reasons discussed above in Part IV.B.3.  As their Reply acknowledges, however, this type of claim is normally subject to a deliberate indifference standard, albeit under the Due Process Clause, rather than the Eighth Amendment.  *See Awnings v. Fullerton,* 912 F.3d 1089, 1101 (8th Cir. 2019) (quoted case omitted) ("[H]istorically, in this circuit, claims of deliberate indifference to an arrestee's medical needs are 'properly analyzed under the Due Process Clause of the Fourteenth Amendment.'").  Because Plaintiff cites deliberate indifference in her allegations concerning the failure to provide medical care claim, and connects that standard

to Due Process Clause precedents in her briefing, the Court does not interpret the failure to provide medical care claim as having been asserted solely pursuant to the Eighth Amendment, and therefore does not regard it as being dismissed along with Plaintiff's other Eighth Amendment claims.  Docs. [142] ¶ 86; [163] at 4-6.

To reiterate, the Court offers no comment as to whether Count I sufficiently states a substantive due process claim for failure to provide emergency medical care.  Rather, it calls to the parties' attention that it recognizes such a claim as asserted and not subject to dismissal based on the motions before it at this time.

### C.  Police Officer Defendants' Motion to Dismiss Count II—Excessive Force

Count II of the complaint asserts a § 1983 claim of excessive force in violation of the Fourth Amendment.  Plaintiff alleges that Defendants Maloy and Jakob used excessive force to effectuate a traffic stop by engaging in a high-speed chase and performing a PIT maneuver on Decedent's vehicle at high speed.  Doc. [142] ¶ 100.  Maloy and Jakob move to dismiss for failure to state a claim and on the basis of qualified immunity, arguing that the facts asserted by Plaintiff regarding the alleged use of excessive force do not violate the Fourth Amendment's objective reasonableness standard.

According to the Police Officer Defendants, the complaint alleges that Decedent disregarded emergency lights activated by the police and instigated a high-speed chase in excess of 90 miles per hour in a primarily residential area.  Maloy and Jakob assert that, taking these allegations as true, Decedent was actively attempting to evade arrest by flight, and posed an immediate threat to himself, the Police Officer Defendants, and the public.  Doc. [152] at 12-13. They contend that their alleged use of force was not constitutionally unreasonable from the perspective of a reasonable officer presented with the same circumstances and without benefit of hindsight, citing *Schoettle v. Jefferson County,* 788 F.3d 855, 859 (8th Cir. 2015) (listing factors

relevant to determination if force used to effect a particular seizure was "reasonable" under the Fourth Amendment), and *Mullenix,* 136 S. Ct. at 310 ("The Court has . . . never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity.").

Plaintiff responds that whether an officer's actions are objectively reasonable is a question of fact for the jury, citing *Marquez v. City of Albuquerque,* 399 F.3d 1216, 1221 (10th Cir. 2005). Plaintiff contends that the complaint sets forth specific facts a jury could consider to be a violation of Decedent's Fourth Amendment right to be free from excessive force, but she does not cite to specific allegations of the complaint.  Plaintiff also asserts that, because the facts alleged in the complaint must be viewed in her favor, Defendants' "speculation" that the complaint shows that Decedent voluntarily disregarded the emergency lights and instigated the high-speed chase should be ignored.  Plaintiff states: "Because of the sham investigation and lack of credibility of [Maloy and Jakob], we do not know at this time if decedent disregarded the emergency lights or instigated the chase.  We do not even know if Decedent actually engaged in any traffic violation such that any search [sic] or seizure would be appropriate much less deadly force."  Doc. [163] at 9. Plaintiff argues that a jury must determine facts "including the speeds, the proximity of the vehicles, what, if any, traffic infraction decedent violated, what witnesses saw, why these officers were outside their jurisdiction when the alleged chase occurred, and whether the officers performed a PIT maneuver as Plaintiff has alleged."  *Id.* at 8.

A claim of "excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."  *Scott v. Harris,* 550 U.S. 372, 381 (2007) (cleaned up) (quoting *Graham,* 490 U.S. at 388).  Contrary to Plaintiff's assertion, the objective reasonableness test that applies to Fourth Amendment excessive force claims "is a pure question of law."  *Id.* at 381, n.8; *Brossart v. Janke,* 859 F.3d 616, 624 (8th Cir.

26

2017).  The Supreme Court has identified the factors relevant to a determination of whether an

officer's use of force was objectively reasonable as:

> the relationship between the need for the use of force and the
> amount of force used; the extent of the plaintiff's injury; any effort
> made by the officer to temper or to limit the amount of force; the
> severity of the security problem at issue; the threat reasonably
> perceived by the officer; and whether the plaintiff was actively
> resisting.

*Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2473 (2015) (citing *Graham,* 490 U.S. at 396); *see*

*Zubrod v. Hoch,* 907 F.3d 568, 577 (8th Cir. 2018) (quoting *Kingsley*).

        The alleged facts relevant to excessive force are that Maloy and Jakob, in a police vehicle

with emergency lights activated, began pursuing Decedent's vehicle in a location outside their

jurisdiction.  The complaint does not allege which officer was driving.  Maloy and Jakob engaged

in a high-speed pursuit of Decedent's vehicle at speeds up to 90 miles per hour in a primarily

residential area with a speed limit between 35 and 40 miles per hour, and then they implemented

one or more PIT maneuvers on Decedent's vehicle, causing it to crash into a tree.  Maloy and

Jakob left the scene without calling for any medical assistance for Decedent and his passenger.

The Court assumes for purposes of this opinion that Maloy and Jakob's actions violated St. Louis

County's written pursuit policies.

        The Supreme Court has consistently held that officers either did not violate the Fourth

Amendment or were entitled to qualified immunity when they used deadly force to terminate car

chases.  In *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004) (per curiam), an officer was entitled to

qualified immunity after she shot "a disturbed felon, set on avoiding capture through vehicular

flight, when persons in the immediate area [were] at risk from that flight."  In *Scott,* 550 U.S. at

381, there was no Fourth Amendment violation when an officer "terminate[d] the car chase by

ramming his bumper" into the vehicle of a person whose reckless driving "posed an actual and

imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase"—even though the officer used his push bumper to run the driver off the road instead of employing a standard PIT maneuver to stop the vehicle as he had been authorized to do, and as a result the vehicle went down an embankment and overturned, leaving the plaintiff a quadriplegic. *Id.* at 375.

In *Plumhoff v. Rickard,* 572 U.S. 765, 777 (2014), officers did not violate the Fourth Amendment (and in fact were entitled to qualified immunity) when they fatally shot a fugitive they reasonably believed was "intent on resuming" a chase that "pose[d] a deadly threat for others on the road." In *Mullenix,* 136 S. Ct. 305, an officer was entitled to qualified immunity when he shot and killed a motorist during a high-speed pursuit in which the driver threatened to kill police officers, even though the officer's decision to shoot was contrary to his supervisor's order to "stand by" and see if spike strips would work to stop the vehicle first. *Id.* at 306-07, 312. The Supreme Court has plainly stated, "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Scott,* 550 U.S. at 386.

In a case decided several months after the incident in this case, the Eighth Circuit rejected the claim that a PIT maneuver violated a motorist's Fourth Amendment right to be free from excessive force under circumstances that did not appear to present any obvious danger to the officer, the motorist, or the public. *Moore-Jones v. Quick,* 909 F.3d 983 (8th Cir. 2018). In *Moore-Jones,* a marked police car pulled the plaintiff over for an expired registration using sirens, lights, and spotlight. *Id.* at 985. The plaintiff initially stopped but then drove away in a low-speed chase, approximately 35 miles per hour in a 55-mile-per-hour-zone, that lasted approximately one minute. *Id.* The officer implemented a PIT maneuver that caused the plaintiff's car to spin into a

28

ditch and hit a cement culvert.  The plaintiff and her passenger were treated at a hospital and released, and she was cited for misdemeanor offenses of expired tags and failure to yield to an emergency vehicle.  *Id.*

The district court in *Moore-Jones* denied qualified immunity to the defendant officer based on "the clearly established law that 'force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.'"  *Id.* at 986 (quoted case omitted).  The Eighth Circuit reversed and explained this general rule "does not apply with obvious clarity to the specific conduct here, where [plaintiff] refused commands to stop."  *Id.*  Instead, the issue was "whether existing precedent put the reasonableness of [the officer's] decision 'beyond debate.'"  *Id.* at 986 (quoting *Mullenix,* 136 S. Ct. at 308).  The plaintiff cited an Alabama district court case holding that a PIT maneuver constituted excessive force against a non-violent misdemeanant who failed to pull over during a daylight pursuit but did not pose an immediate risk to the officers or bystanders.  The Eighth Circuit distinguished the Alabama case as turning on the fact the defendants were plain clothes officers driving an unmarked car with a malfunctioning emergency light, who failed to adequately identify themselves as law enforcement.  *Id.*

The Eighth Circuit examined existing precedent and stated:

> Other cases show that PIT maneuvers can reasonably be used.  *See Sharp v. Fisher,* 532 F.3d 1180, 1184 (11th Cir. 2008) (per curiam) (finding PIT maneuver reasonable when used against a suspect fleeing at high speeds and driving erratically); *Abney v. Coe,* 493 F.3d 412, 418 (4th Cir. 2007) (finding PIT maneuver reasonable when used against motorcyclist endangering the public by recklessly fleeing down narrow, winding roads).  *Cf. Scott v. Harris,* 550 U.S. 372, 386 (2007) (PIT maneuver authorized, instead officer struck suspect's car from directly behind); *Pasco ex rel. Pasco v. Knoblauch,* 566 F.3d 572, 581 (5th Cir. 2009) (intentionally bumping recklessly-fleeing, intoxicated driver off the road was reasonable, even though no other vehicles or pedestrians were encountered during the pursuit); *Helseth v. Burch,* 258 F.3d 867,

872 (8th Cir. 2001) (en banc) (finding unsuccessful PIT maneuvers
used against fleeing suspect during high-speed chase did not have a
conscience-shocking intent to harm the driver and passengers
necessary for a Due Process Clause violation).

*Id.* at 986-87.  The Eighth Circuit found the facts in *Moore-Jones* fell "somewhere between the

[Alabama] case and the other cases above" and concluded the officer's "actions were in the 'hazy

border between excessive and acceptable force.'"  *Id.* at 987 (quoting *Mullenix,* 136 S. Ct. at 312).

The Eighth Circuit held the plaintiff did not have a clearly established Fourth Amendment right to

be free of a PIT maneuver under the circumstances and the officer was entitled to qualified

immunity.  *Id.*

The Court construes the complaint's factual allegations in the light most favorable to

Plaintiff but will not ignore factual allegations or give Plaintiff unreasonable inferences arising

from the facts alleged.  The complaint alleges that Maloy and Jakob activated their police

vehicle's emergency lights, and thus it necessarily implies that Decedent did not stop his vehicle

in response to that command.  Even assuming Decedent did not see the lights, the complaint

alleges that Maloy and Jakob pursued Decedent's vehicle in a chase at speeds up to 90 miles per

hour in a primarily residential area with a 35- to 40-mile-per-hour speed limit and implemented a

PIT maneuver on Decedent's vehicle at dangerously high speed.  These allegations necessarily

imply that Decedent's vehicle was fleeing from the officers at high speed.  Otherwise, there would

have been no pursuit.

This Court has recently noted "the obvious threat posed by a fleeing motorist—not just to

the officer but also to the public[.]"  *Gerling v. City of Hermann, Mo.,* No. 4:17-cv-02702-JAR,

2020 WL 619509, at *2 (E.D. Mo. Feb. 10, 2020).  Decedent's conduct as alleged in the complaint

created a substantial and immediate risk of great bodily harm or death to other motorists,

pedestrians, Maloy and Jakob, Decedent, and his passenger.  The Supreme Court decisions

discussed above establish that police officers have substantial authority to use deadly force to end car chases because of the dangers such chases pose to public safety.  The Supreme Court has stated that, although the use of tactics such as vehicle ramming and PIT maneuvers to end a high-speed chase presents a high likelihood of serious injury or death to the fleeing driver, it is appropriate to "take into account not only the number of lives at risk, but also their relative culpability." *Scott*, 550 U.S. at 384.  In the reasonableness calculation, it was Decedent who "intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately" ended in his and his passenger's deaths as a result of the crash following the PIT maneuver.  *See id.*  "By contrast, those who might have been harmed had [Maloy and Jakob] not taken the action [they] did were entirely innocent."  *Id.*  Moreover, the Supreme Court has squarely rejected the proposition that police should simply cease a pursuit, instead announcing a "more sensible rule:  A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."  *Id.* at 386.

Plaintiff does not cite a single case to establish that Decedent had a clearly established Fourth Amendment right to be free of a PIT maneuver under the facts alleged in the complaint. The facts show that the circumstances surrounding Defendants Maloy and Jakob's decision to use a PIT maneuver to stop Decedent's vehicle fall well within the range of existing precedent where such use has been deemed reasonable.  The Court concludes it was reasonable for Maloy and Jakob to take the actions they did in pursuing Decedent's vehicle and using a PIT maneuver to stop it.  As a result, Maloy and Jakob's actions did not violate Decedent's clearly established Fourth Amendment rights.  Further, in light of the foregoing Supreme Court and Eighth Circuit precedent, the Court cannot say that "only someone plainly incompetent or who knowingly

violates the law would have perceived a sufficient threat and acted as [Maloy and Jakob] did" in this situation. *Mullenix,* 136 S. Ct. at 310 (internal quotation marks and alteration omitted).

The Police Officer Defendants' motion to dismiss Count II will be granted for failure to state a claim because the facts alleged do not establish a Fourth Amendment violation. For the same reason, Defendants Maloy and Jakob are also entitled to dismissal of Count II on the basis of qualified immunity. *See Morgan,* 920 F.3d at 523

   D.   Police Officer Defendants' Motion to Dismiss Count IV—Civil Conspiracy

Count IV of the complaint asserts civil conspiracy claims against all Defendants pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, to deny Plaintiff access to the courts. The Police Officer Defendants move to dismiss Plaintiff's conspiracy claims in Count IV on several grounds.

   1.   *Count IV Sufficiently Alleges a Meeting of the Minds*

First, the Police Officer Defendants argue Plaintiff fails to sufficiently allege a meeting of the minds to deprive her of her constitutional rights, because the complaint does not specify how there was a meeting of the minds, as it alleges actions by Defendants Broniec, Teague, and/or Kempke, but no specific facts against the Police Officer Defendants.

To succeed on her § 1983 conspiracy claims, Plaintiff must allege that (1) Defendants conspired to deprive her of a federal constitutional or statutory right, (2) "at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy," and (3) Plaintiff was injured by that overt act. *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs,* 725 F.3d 843, 850 (8th Cir. 2013) (quoting *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir. 1999)). To be liable for civil conspiracy, at least one of the Defendants must have committed some other underlying constitutional violation. *Novotny v. Tripp Cnty.,* 664 F.3d 1173, 1180 (8th Cir. 2011). Although a "conspiracy is not itself actionable in the absence of an underlying wrongful act . . . only one of the alleged conspirators must have committed [such an

32

act.]"  *Process Controls Int'l, Inc. v. Emerson Process Mgmt.,* 2011 WL 6091722, at *2 (E.D. Mo. Dec. 7, 2011) (citations and internal quotation marks omitted).

Even if the acts in furtherance of the conspiracy are adequately alleged, a plaintiff must do more than "merely allude to a meeting of the minds . . . [she] must support the assertion[s] with specific allegations of collusion."  *Id.* at *3 (citing *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1063 (8th Cir. 2005)).  A plaintiff must allege sufficient "specific facts" to give rise to an inference of a meeting of the minds among the defendants to violate the plaintiff's constitutional rights.  *Murray v. Lene,* 595 F.3d 868, 870 (8th Cir. 2010).  To be sufficiently specific, a plaintiff "must at least allege that 'the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and provide some facts 'suggesting such a "meeting of the minds."'"  *Smith v. Bacon,* 699 F.2d 434, 436-37 (8th Cir. 1983) (per curiam) (quoting *White v. Walsh,* 649 F.2d 560, 561 (8th Cir. 1981)).  "[T]he plaintiff need not show that each participant knew the exact limits of the illegal plan, but the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights."  *White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008) (quotations and alterations omitted).  At the pleading stage, the Court recognizes that "conspiracies are by their nature usually clandestine."  *Walsh,* 649 F.2d at 561 (citation omitted).  "[I]t is a rare case in which the plaintiff will be able to provide direct evidence of a conspiratorial agreement."  *Bacon,* 699 F.2d at 437.

The complaint includes the following allegations involving Maloy and Jakob that are potentially relevant to a conspiracy to deny Plaintiff access to the courts.  Maloy and Jakob were on-duty police officers in a St. Louis County police vehicle.  Doc. [142] ¶ 20.  Maloy and Jakob pursued Decedent's vehicle at high speed, intentionally performed a PIT maneuver on the vehicle causing it to crash into a tree, left the scene without rendering aid, and denied any involvement

with the crash.  *Id.* ¶¶ 3-7, 32-35, 53, 55-57.  Maloy and Jakob "knew an accident with injuries

occurred as a direct result of their unlawful high-speed pursuit of plaintiff [sic]" but "left the scene

of the accident" *id.* ¶¶ 38-39; "[e]ach named defendant was aware of this fact and attempted to

conceal it," *id.* ¶ 40; "Defendant's [sic] failed to report the conduct of Malloy [sic] and Jakob for

as [sic] they were actively involved in the cover-up of constitutional violations and criminal

conduct" *id.* ¶ 41; Maloy and Jakob "and/or St. Louis County Police Officials reported this

incident as a single-car accident caused by driver error despite witness accounts to the contrary

and even though it substantially deviated from the actual events that occurred," *id.* ¶ 63; and "St.

Louis County Police falsely claimed that its officers were not involved in a pursuit," "failed or

refused to listen to eyewitness accounts of a police chase involving a 'pit' maneuver," "ignored

and/or completely disregarded video footage of the pursuit caught on camera by various

establishments," "commandeered video footage of the pursuit . . . but failed and/or refused to

acknowledge that the footage revealed a high-speed pursuit involving its officers," and made a

"public false statement as to the high-speed police chase . . . without meaningful investigation."

*Id.* ¶¶ 64-68.  Maloy and Jakob "demonstrated an interest and desire to avoid liability for the

actual events that transpired" and "intentionally gave false information to law enforcement,

thereby making a false report to police."  *Id.* ¶¶ 71-72.  "Each of the aforementioned defendants

intentionally misrepresented the facts and evidence so as to mislead the public and avoid liability

and to preclude Plaintiff from her constitutional right to full access to the Courts."  *Id.* ¶ 73.

Further, "St. Louis County, and other Missouri Police Officials, directly communicated

with the other Defendants and investigators of the matter, regarding the incident described herein.

These communications were designed to assist in the efforts of averting full liability for the

conduct engaged in by law enforcement and to deny Plaintiff full access to the Courts, which is a

constitutionally protected right."  *Id.* ¶ 74.  MSHP investigator Defendant Broniec and other

"MSHP Command Rank Personnel" met with Plaintiff at her home to provide a report of the MSHP investigation into the accident.  At the meeting, unspecified "Defendants stated that . . . [Defendant] Belmar made various unsolicited contacts and communications with MSHP, regarding the MSHP independent investigation."  *Id.* ¶¶ 75-76.  "Chief Belmar attempted to cover-up [sic] the conduct of Malloy [sic] and Jakob set-forth hereinabove."  *Id.* ¶ 114.  "Defendants shared the general conspiratorial objective which was to conclude that the officers did not violate engage [sic] in criminal conduct and did not violate Plaintiff's constitutional rights and to cover-up [sic] such misconduct."  *Id.* ¶ 123.

As the Court has previously observed and these quoted portions reflect, the complaint is far from a model of clarity.  Nonetheless, accepting the foregoing factual allegations as true and giving Plaintiff all reasonable inferences arising therefrom, the complaint alleges that Maloy and Jakob left the scene of a fatal accident they had caused by performing a PIT maneuver on Decedent's vehicle and then made a false report about the events leading to Decedent's death to avoid liability and keep Plaintiff from accessing the courts.  Plaintiff alleges the other Defendants knew that Maloy and Jakob had caused the accident, left the scene, and filed a false report, but sought to conceal this information.

In light of the factual allegations offered against other defendants—that St. Louis County police officials refused to listen to eyewitness accounts of police involvement in a high-speed pursuit and a PIT maneuver causing the crash, obtained but ignored video evidence showing police involvement in a high-speed pursuit, and made a false public statement concerning the crash; that Defendant Belmar communicated with "other Defendants" and MSHP investigators and made unsolicited communications and comments to MSHP investigators for the specific purpose of avoiding liability for Maloy and Jakob's acts and to prevent Plaintiff from accessing the courts; and that the MSHP Defendants reached a conclusion as to the cause of the accident

prior to conducting their investigation, agreed to perpetuate misleading, inaccurate, and untruthful statements made by Defendants Belmar, Maloy, and Jakob, failed to obtain and preserve evidence, and engaged in a sham investigation to justify the conclusion that no PIT maneuver was performed on Decedent's vehicle—the allegations against Maloy and Jakob are sufficient to suggest they joined a meeting of the minds directed toward an unconstitutional action.  Even if Maloy and Jakob did not know the full extent of the alleged conspiracy, Plaintiff's allegations against them offer enough specificity to indicate, at the pleading stage of the litigation, their participation in it. *Cf. Ellingson v. Piercy,* 2016 WL 2745868, at *11 (W.D. Mo. May 10, 2016) (complaint's allegations of § 1983 conspiracy claim were sufficient to suggest meeting of the minds where plaintiffs alleged a defendant MSHP trooper filed a false report concerning an arrestee's death and other defendants filed similar false reports for the purpose of protecting the trooper from liability).

### 2.   *Count IV Fails to Allege the Elements of Denial of Access to the Courts*

Next, the Police Officer Defendants contend that Plaintiff has not alleged facts to show she has been denied meaningful access to the courts, in that she must allege that she suffered actual prejudice to a non-frivolous legal claim, citing *Lewis v. Casey,* 518 U.S. 343, 349-55 (1996), and *Smith v. Boyd,* 945 F.2d 1041, 1043 (8th Cir. 1991).  Defendants claim that Plaintiff alleges only that their communications were designed to deny her full access to the courts, citing Doc. 142 ¶ 74, while her complaint simultaneously seeks redress for the alleged wrongful death of Decedent and was filed approximately four months after his death.  Thus, Defendants argue, Plaintiff does not show the loss of an underlying cause of action, as required by *Christopher v. Harbury,* 536 U.S. 403, 417 (2002) ("[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and like a plain statement should describe any remedy available under the access claim and presently unique to it.").

36

Plaintiff responds only that she has pleaded "facts sufficient to show that the cover-up and sham investigation conducted by these Defendants were intended to and, in fact, continue to deny her meaningful access to the court—specifically the hiding evidence [sic] needed to fully bring her wrongful death claim." Doc. [163] at 11.  Defendants reply that Plaintiff fails to comply with Rule 8(a) and *Harbury* because her complaint "contains no plain statement describing any remedy available under her access to the court claim and presently unique to it." Doc. [170] at 8.

In the civil conspiracy claim in Count IV, Plaintiff seeks to assert a "backward-looking" denial of access to the courts claim as the underlying constitutional violation.  *See Lenderman,* 725 F.3d at 851 n.4 (quoting *Harbury,* 536 U.S. at 414 n.11).  Such a claim may arise where a plaintiff alleges that an underlying claim cannot be tried, or be tried with all of the evidence, because official conduct caused the loss or inadequate resolution of the underlying claim.  *Harbury,* 536 U.S. at 412 n.6.  To sufficiently plead a backward-looking denial of access claim, a plaintiff must allege, among other things, the lost or frustrated cause of action and a compensable injury:

> [T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought.  There is, after all, no point in spending time and money to establish facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Id.* at 415.  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.  Crucially, "because these backward-looking cases are brought to get relief unobtainable in other suits, the remedy sought must itself be identified to hedge against the risk

that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." *Id.* at 416.

Thus, to plead an actual injury sufficient to proceed with her denial of access to courts claim, Plaintiff must allege (1) an arguably meritorious underlying cause of action, for which (2) Defendants' action burdened or denied her access to the courts, resulting in (3) an injury that cannot be remedied through other means. *See Ellingson v. Piercy,* No. 2:14-cv-04316-NKL, 2016 WL 4033259, at *3 (W.D. Mo. July 27, 2016) (citing *Harbury,* 536 U.S. at 414-15); *see also Stricklin v. Stark,* No. 5:18-cv-00100-JM-JTR, 2019 WL 7501395, at *3 (E.D. Ark. Nov. 14, 2019) ("to establish an 'actual injury' sufficient to proceed with his court access claim, [Plaintiff] must identify: (1) an arguably meritorious underlying claim regarding his conditions of confinement; (2) actions by Defendants that impeded litigation of that claim; and (3) a remedy that may be awarded that would not otherwise be available. *See Harbury,* 536 U.S. at 415."). [11]

As the Police Officer Defendants state, Plaintiff was able to file her complaint asserting both § 1983 and wrongful death claims within the limitations period. But that does not prove there has been no frustration of Plaintiff's claims or denial of access. The Eighth Circuit has recognized that a police cover-up can give rise to a denial of access claim even where the statute of limitations has not run. *See Lenderman*, 725 F.3d 843; *see also Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1428 (8th Cir. 1986) ("An individual is entitled to free and unhampered access to the courts" and the right of access may be violated where officials act to "intimidate or chill [her] exercise of that right."). The Court therefore examines whether

---

[11] The appropriate constitutional basis for a denial of access to the court claims is subject to debate, but some such claims are properly brought under the Fourteenth Amendment's Due Process Clause. *See Christopher v. Harbury,* 536 U.S. 403, 415 & n.12 (2002) (describing basis for constitutional right of access to the courts as "unsettled" and listing various sources); *Scheeler v. City of St. Cloud, Minn.,* 402 F.3d 826, 830-31 (8th Cir. 2005) (noting "unsettled" constitutional basis for denial of access claims; discussing the First Amendment and the Due Process Clause as potential sources for such a claim).

Plaintiff's complaint sufficiently alleges the elements of a backward-looking denial of access to courts claim.

The complaint alleges that the purpose of the conspiracy was to deny Plaintiff "full access to the courts." Doc. [142] ¶¶ 73-74, 155. The complaint does not identify an underlying claim as to which Plaintiff's access to the courts has been impeded. Plaintiff responds that her wrongful death claim has been frustrated, but the complaint itself fails to identify an underlying claim that has been impeded. "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint[.]" *Harbury,* 536 U.S. at 415. Plaintiff cannot amend her complaint by means of argument in her opposition memorandum. *Gallagher v. City of Clayton,* 699 F.3d 1013, 1022 (8th Cir. 2012). Plaintiff's complaint fails to allege the first essential element of her access to courts claim.

As to the second element, the complaint does allege facts concerning actions by the Police Officer Defendants, St. Louis County, and Belmar that could serve to impede Plaintiff's wrongful death claims, including filing a false report, failing to consider eyewitness reports and security camera footage showing a police pursuit, and making false public statements. The complaint sufficiently pleads facts to support the second element of the access to courts claim.

The complaint does not allege the third element, however—an injury that cannot be remedied through other means. There are no factual allegations tending to show that the denial of access claim "provide[s] a remedy that could not be obtained on an existing claim." *Harbury,* 536 U.S. at 421. The complaint alleges that as a result of the cover-up, Plaintiff "does not know and will likely never discover if there was probable cause for the police pursuit" or "if an unlawful and unnecessary 'pit' maneuver was performed on her son's car"; "Maloy and Jakob will not be held responsible for criminal behavior"; and "Plaintiff will never know if the police chase was initiated because of [Decedent's] race." Doc. [142] ¶¶ 131-35. These allegations do not describe a cause

of action.  Moreover, the remedy Plaintiff seeks through the conspiracy count—various forms of money damages—is virtually the same remedy she seeks in all other counts and is identical to the relief she seeks in Count V (failure to intervene by the Police Officer Defendants) and Count VI (failure to intervene by the MSHP Defendants).  *Compare id.* ¶ 140 *with* ¶¶ 145, 151.

Thus, the complaint does not identify any unique loss Plaintiff seeks to remedy with her access to courts claim that she cannot be "awarded on a presently existing claim."  *Harbury,* 536 U.S. at 416.  Instead, the complaint indicates that Plaintiff seeks money damages in this case for the demonstrated consequences of the wrongful conduct she alleges, *see id.* at 421, and Plaintiff similarly seeks money damages in the state court wrongful death action.

Because Plaintiff has not alleged an underlying claim as to which her access to the courts has been impeded or an actual injury resulting from the alleged conspiracy that cannot be remedied through other means, she has not made out a § 1983 conspiracy claim based on denial of access to the courts.  That claim will be dismissed for failure to state a claim.

### 3. *Count IV Fails to Allege an Equal Protection Violation*

Next, the Police Officer Defendants argue that Plaintiff cannot base her civil conspiracy claim in Count IV on a violation of her equal protection rights, because she fails to allege sufficient facts indicating she was treated differently by a government official than similarly situated persons and that such differential treatment was not rationally related to a legitimate government objective, citing *Koscielski v. City of Minneapolis,* 435 F.3d 898, 901 (8th Cir. 2006).  According to Defendants, the complaint alleges no facts to suggest Plaintiff was treated differently than similarly situated individuals, does not refer to Plaintiff's right to equal protection, and repeatedly alleges that Defendants were acting pursuant to patterns, practices, policies, and/or customs, suggesting that Plaintiff was not treated differently than others.  Plaintiff responds that she "has alleged sufficient facts that these Defendants treated her and her son differently in, not

40

only the seizure of decedent, but also the subsequent sham investigation due to their race and as such failed to protect her equal protect [sic] rights." Doc. [163] at 11, citing Doc. [142] ¶¶ 124-28.

To establish "an equal protection violation involving neither a suspect classification nor a fundamental right," Plaintiff must prove that she "was treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective." *Koscielski,* 435 F.3d at 901 (citations omitted).   To prove an equal protection violation based on race in the context of a police interaction, Plaintiff must prove that the Police Officer Defendants exercised their discretion to enforce a law solely on the basis of race. *Clark v. Clark,* 926 F.3d 972, 980 (8th Cir. 2019), *cert. denied,* 140 S. Ct. 628 (2019) (citing *Johnson v. Crooks,* 326 F.3d 995, 999-1000 (8th Cir. 2003)).   "This requires a showing of both discriminatory purpose and discriminatory effect." *Id.* (citing *Johnson,* 326 F.3d at 999-1000). "[E]ncounters with officers may violate the Equal Protection Clause when initiated solely based on racial considerations." *Id.* (quoting *United States v. Frazier,* 408 F.3d 1102, 1108 (8th Cir. 2005)).   "When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." *Id.*  (quoting *Johnson,* 326 F.3d at 1000).

Plaintiff identifies the following allegations in her complaint to support her equal protection claims:

> 124. Defendants furthered the conspiracy by participating in it from its inception or by participating in the cover-up thereof and/or ignoring the course of conduct set forth herein so as to insulate themselves and others from liability for the outrageous and unlawful acts as described herein, showing a tacit understanding to carry out the prohibited conduct.
>
> 125. St. Louis County and the Missouri State Highway Patrol permits and condones constitutional violations of its officers.

126. Defendants have a history of ignoring and/or condoning constitutional violations, inasmuch as Defendants [sic] supervisors and leadership do too little to ensure that officers act in accordance with law and policy, and rarely respond meaningfully to officer misconduct, resulting in a pattern of pursuits without reasonable suspicion and arrests without probable cause in violation of the Fourth Amendment; infringement on free expression, as well as excessive force in violation of the Fourth Amendment.

127. Defendants' approach to law enforcement both reflects and reinforces racial bias, including stereotyping.

128. The harms of these practices are borne disproportionately by African Americans, due in part to intentional discrimination on the basis of race.

Doc. [142] at 24.

These allegations are not sufficient to establish an equal protection claim as there are no factual allegations that the Police Officer Defendants treated Plaintiff or Decedent differently than any similarly situated persons. *See Koscielski,* 435 F.3d at 901. The complaint also contains no factual allegations sufficient to support a claim that the Police Officer Defendants exercised their discretion—i.e., in attempting to stop Decedent's vehicle, pursuing it at high speed, and engaging in a PIT maneuver—on the basis of Decedent's race. *See Clark,* 926 F.3d at 980. And there are no factual allegations of the Defendants' discriminatory purpose or discriminatory effect. *Id.* In fact, the complaint does not even allege the race of Plaintiff or Decedent.

Consequently, even accepting the complaint's allegations as true and granting Plaintiff all reasonable inferences arising therefrom, the complaint fails to state a claim for an equal protection violation arising from the Police Officer Defendants' actions. Therefore, Plaintiff fails to state a § 1983 conspiracy claim against the Police Officer Defendants based on the denial of her or Decedent's equal protection rights, and that claim will be dismissed.

4.  *Count IV Fails to State a Claim Under 42 U.S.C. §§ 1985 and 1986*

Next, the Police Officer Defendants move to dismiss Count IV's conspiracy claims under 42 U.S.C. §§ 1985 and 1986 for the same reasons as her civil conspiracy claims under § 1983.  As a threshold matter, Plaintiff does not specify which of the five different kinds of conspiracies prohibited by § 1985 she means to assert.  *See Harrison,* 780 F.2d at 1429 (listing conspiracies prohibited by § 1985).  Defendants interpret Count IV as asserting a conspiracy under the first clause of § 1985(3).  Plaintiff does not challenge this interpretation in her opposition.

To prove a § 1985(3) conspiracy, Plaintiff must establish "(1) that the defendants conspired, (2) with the intent to deprive [her] of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that [she] was injured or deprived of having and exercising any right or privilege of a citizen of the United States."  *Crutcher-Sanchez v. County of Dakota,* 687 F.3d 979, 987 (8th Cir. 2012).

The Police Officer Defendants argue that Plaintiff fails to plead the existence of a § 1985(3) conspiracy because she alleges no facts indicating a meeting of the minds nor any violation of her right of access to the courts or equal protection resulting from the alleged conspiracy.  The Court has already concluded that Plaintiff fails to sufficiently plead a denial of her right to access the courts or an equal protection violation.  *See* Sections IV.B.2 and IV.B.3 *supra*.  Because she has not alleged the deprivation of any qualifying right or privilege, she fails to state a § 1985(3) claim.  *See Askew,* 191 F.3d at 957-59 (where there was no violation of a constitutional right or privilege, summary judgment in favor of the defendant on the § 1985 civil conspiracy claim was proper).  Further, because the complaint does not allege that Plaintiff is a member of a class that suffers from invidious discrimination—a requirement for § 1985(3) conspiracies to deprive plaintiffs of equal protection, *see Bray v. Alexandria Women's Health*

43

*Clinic,* 506 U.S. 263, 268-69 (1993) (citing cases)—she also fails to state a claim under the second clause of § 1985(3).

Defendants move to dismiss Plaintiff's 42 U.S.C. § 1986 claim on the basis that it must be predicated on a 42 U.S.C. § 1985 claim.  That is correct.  To assert a § 1986 claim for failure to prevent a conspiracy to interfere with civil rights, a plaintiff must show: "(1) the defendants had actual knowledge of a § 1985 conspiracy, (2) the defendants had the power to prevent or aid in preventing the commission of the § 1985 conspiracy, (3) the defendants neglected or refused to prevent the conspiracy, and (4) a wrongful act was committed." *Barstad v. Murray Cnty.,* 420 F.3d 880, 887 (8th Cir. 2005).  Consequently, a § 1986 claim "is dependent upon a valid § 1985 claim." *Id.*  Plaintiff's §1986 claim necessarily fails.

Because the Police Officer Defendants' motion to dismiss Plaintiff's conspiracy claims under 42 U.S.C. §§ 1985 and 1986 will be granted for failure to state a claim upon which relief can be granted, the Court does not reach Defendants' intracorporate conspiracy doctrine argument.

E.  Police Officer Defendants' Motion to Dismiss Count V—Failure to Intervene

Count V of the complaint asserts a § 1983 claim against Defendants Maloy and Jakob for failure to intervene in the excessive use of force.  Doc. [142] at 27.  Maloy and Jakob move to dismiss on the grounds that (1) Plaintiff fails to plead facts that either Defendant had reason to know the other would use excessive force or that either could have prevented and/or stopped the other from using excessive force; (2) there is no clearly established law regarding a duty to intervene outside of the excessive force context; and (3) Plaintiff has not pleaded sufficient facts to show that Maloy and Jakob acted unreasonably during the alleged use of force, and therefore her derivative claim of failure to intervene must be dismissed.

Plaintiff responds that a "high speed chase and a PIT maneuver could be found by a jury to constitute excessive force," and she argues that her allegation that "[b]oth Defendants were

partners and in the same police car when the events occurred" means that "[t]he one had to have known of the excessive force used by the other during the high-speed chase and the PIT maneuver."[12]  Doc. [163] at 12.

A police officer may be liable for failure to intervene to prevent the use of excessive force when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Nance v. Sammis,* 586 F.3d 604, 612 (8th Cir. 2009) (citation omitted).  Because Plaintiff must show, among other things, that Maloy and Jakob "observed or had reason to know that excessive force would be or was being used," *id.,* the Court's conclusion that Maloy and Jakob did not use excessive force when they implemented a PIT maneuver on Decedent's vehicle is fatal to Plaintiff's claim that they unconstitutionally failed to intervene to prevent each other from using excessive force.  *See Hicks v. Norwood,* 640 F.3d 839, 843 (8th Cir. 2011) (failure to intervene claim necessarily fails where no excessive force was used); *Farrington v. Smith,* 707 F.3d 963, 972 (8th Cir. 2013) (same, citing *Hicks*).  In addition, the complaint does not include any factual allegations to establish either prong of a claim for failure to intervene.  Finally, "outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations," *Hess v. Ables,* 714 F.3d 1048, 1052 (8th Cir. 2013), so the complaint cannot assert any other failure to intervene claim.

The Court will grant the Police Officer Defendants' motion to dismiss Count V for failure to state a claim upon which relief can be granted.

---

[12] There is no factual allegation in the complaint to support the last sentence.

V.    **MSHP Defendants' Motion to Dismiss Count IV—Civil Conspiracy under 42 U.S.C. §§ 1983, 1985, and 1986**

Defendants Broniec, Kempke, and Teague, the MSHP Defendants, are named in Counts IV and VI of the complaint only.  As previously discussed, Count IV asserts claims for civil conspiracy pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986.  The MSHP Defendants move to dismiss Count IV on the grounds that: (1) Plaintiff lacks the legal capacity to bring this claim on behalf of Decedent under Mo. Rev. Stat. § 537.080; (2) Plaintiff fails to state a claim upon which relief can be granted against them in Count IV; and (3) Defendants are entitled to qualified immunity.  The MSHP Defendants' Memorandum in Support of their Motion to Dismiss primarily addresses the first two grounds and raises the affirmative defense of qualified immunity in a two-paragraph summary argument at the end.  Doc. [147] at 14-15.

As previously stated, "[q]ualified immunity shields officials from civil liability in § 1983 actions when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Morgan,* 920 F.3d at 523 (quoting *Pearson,* 555 U.S. at 231).  "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct."  *Id.* (quoting *Nord,* 757 F.3d at 738).  "Unless both of these questions are answered affirmatively, [a defendant] is entitled to qualified immunity."  *Id.* (quoting *Nord,* 757 F.3d at 738).  "And, courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'"  *Id.* (quoting *Nord,* 757 F.3d at 738-39).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Id.* (quoting *Reichle,* 566 U.S. at 664).  To defeat a defendant's claim of qualified immunity, a plaintiff "bears the burden of

showing that the facts alleged, construed in the light most favorable to [her], demonstrate the violation of a constitutional right that was clearly established at the time of the violation." *Church,* 898 F.3d at 832.

A. Plaintiff Cannot Bring Conspiracy Claims on Decedent's Behalf Against the MSHP Defendants

First, the MSHP Defendants argue that Plaintiff lacks the legal capacity to bring the claims in Count IV under Missouri's Wrongful Death statute, because the conspiracy allegations are based on acts alleged to have occurred entirely after Decedent's death, and the statute only authorizes a cause of action where the death of a person results from the act or conduct of a defendant, citing Mo. Rev. Stat. § 537.080(1).[13]  Plaintiff responds that the claims in Count IV belong to both her and Decedent and asserts without citation to any authority that she has the legal capacity to bring claims on behalf of Decedent because she is his mother.  She further argues that Count IV also alleges that the MSHP Defendants' involvement in the "conspiracy to cover-up [sic] facts related to the cause of her son's death" violated her constitutional right to access to the courts, including her ability to recover under Missouri's Wrongful Death statute.  Doc. [162] at 3.

The MSHP Defendants reply that Plaintiff cannot assert any claim on behalf of Decedent for a constitutional violation alleged to have occurred entirely after his death, as this would be outside the scope of the Missouri Wrongful Death statute's coverage and Plaintiff's legal capacity to assert the claims as a survivor under the statute.  Defendants further argue that Plaintiff has not

---

[13] The conspiracy claims in Count IV appear to be asserted pursuant to 42 U.S.C. § 1983 only, and not the Missouri Wrongful Death statute.  *See* Doc. [142] ¶¶ 23-25; *id.* at 22 (label of Count IV referring to federal statutes); *id.* ¶ 140(b) (seeking costs and attorney's fees pursuant to 42 U.S.C. § 1988).  Nonetheless, the Court addresses the MSHP Defendants' argument concerning the Missouri Wrongful Death statute because Plaintiff's Memorandum in Opposition appears to argue Count IV is asserted pursuant to the state statute as well as Section 1983.  *See* Doc. [162] at 3.

sufficiently pleaded a civil conspiracy to deny her constitutional rights to access to the courts, equal protection, or substantive due process.[14]

The MSHP Defendants are correct that Plaintiff cannot assert claims on behalf of Decedent that arose after his death under either the Missouri Wrongful Death statute or § 1983.  The Missouri Wrongful Death statute provides a cause of action to survivors for injuries that occurred to a decedent *prior to death*.  *See* Mo. Rev. Stat. § 537.080.1.  Section 1983 does not provide a cause of action on behalf of a deceased for events occurring after death, as the civil rights of a person cannot be violated after he has died.  *Riley v. St. Louis Cnty. of Mo.,* 153 F.3d 627, 629 n.3 (8th Cir. 1998).  Because the civil conspiracy claims against the MSHP Defendants in Count IV are based on facts alleged to have occurred entirely after Decedent's death, Plaintiff cannot assert these claims either on Decedent's behalf or as his heir, next of kin, or personal representative. *See, e.g., A.A. ex rel. Grady v. City of Florissant,* 2015 WL 5561830, at *4 (E.D. Mo. Sept. 21, 2015) ("[A]s a matter of law, plaintiffs cannot proceed on claims based on any search conducted in violation of the Fourth Amendment that occurred after [decedent's] death,") (citing *Guyton v. Phillips,* 606 F.2d 248, 250 (9th Cir. 1979) ("We find that the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death.  A 'deceased' is not a 'person' for the purposes of 42 U.S.C. §§ 1983 and 1985, nor for the constitutional rights which the Civil Rights Act serves to protect.")).

Plaintiff can assert the violation of her own constitutional rights based on the alleged cover-up following Decedent's death, however, and thus the Court turns to the MSHP Defendants' motion to dismiss her claims.

---

[14] Although the latter are new arguments raised in the Reply, Plaintiff did not seek leave of Court to address them and had the opportunity to respond to similar arguments made by the Police Officer Defendants.

B.   Plaintiff Fails to State a § 1983 Conspiracy Claim Against the MSHP Defendants

With respect to the MSHP Defendants, the complaint alleges that Broniec, Kempke, and Teague are certified law enforcement officers in the State of Missouri who investigated the crash of Decedent's vehicle for the Missouri State Highway Patrol.  Doc. [142] ¶¶ 17-19.  The complaint alleges that based on their investigation of the crash, the MSHP Defendants knew the PIT maneuver allegedly used by Defendants Maloy and Jakob was a use of force "that could be deemed excessive," *id.* ¶ 54; knew that Maloy and Jakob failed to render aid to Decedent, *id.* ¶¶ 56-62; "intentionally misrepresented the facts and evidence so as to mislead the public and avoid liability and to preclude Plaintiff from her constitutional right to full access to the Courts," *id.* ¶ 74; and did not report the alleged criminal acts of Maloy and Jakob, *id.* ¶ 77.  The complaint alleges that Broniec and "other MSHP Command Rank Personnel" came to Plaintiff's home to provide a report of the investigation and stated that Defendant Belmar "made various unsolicited contacts and communications with MSHP, regarding the MSHP independent investigation."  *Id.* ¶ 76.

The complaint alleges the MSHP Defendants reached a conclusion as to the cause of the accident prior to conducting their investigation, *id.* ¶ 115; "agreed to perpetuate the misleading, inaccurate and untruthful statements made by [Defendants] Belmar, Malloy [sic] and Jacob," *id.* ¶ 116; refused to speak to eyewitnesses to the chase and subsequent crash, *id.* ¶ 117; inspected Decedent's vehicle "allegedly to determine whether or not defendants Malloy [sic] and Jakob performed a maneuver on the car" but broke the tail light of the vehicle to remove a brake light and therefore "failed to preserve evidence thus denying plaintiff a meaningful opportunity to determine whether or not a 'pit' maneuver was performed on" Decedent's car, *id.* ¶¶ 118-19; purchased and used new accident reconstruction software to "manipulate" and influence the cause

49

of the accident, *id.* ¶¶ 120-21; and engaged in a "sham" investigation to justify the conclusion that no PIT maneuver was performed on Decedent's vehicle, *id.* ¶ 122.

As discussed above, to state a claim for a § 1983 conspiracy, Plaintiff must allege that (1) the MSHP Defendants conspired to deprive her of a federal constitutional or statutory right, (2) "at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy," and (3) Plaintiff was injured by that overt act. *See Lenderman,* 725 F.3d at 850 (quoting *Askew,* 191 F.3d at 957).

The MSHP Defendants argue that Count IV fails to state a claim for civil conspiracy against them because Plaintiff fails to allege material facts indicating that any of her constitutional rights have been violated, specifically her rights to access the courts, equal protection, and substantive due process.  Defendants argue that the complaint does not allege any facts showing that Plaintiff suffered actual prejudice to a non-frivolous legal claim as necessary for a denial of access to the courts claim, citing *Lewis v. Casey,* 518 U.S. at 349-55.  They further argue that the complaint does not allege facts to establish an equal protection violation either that Plaintiff was treated differently by a government official than similarly situated persons and such differential treatment was not rationally related to a legitimate government objective, citing *Koscielski,* 435 F.3d at 901, or that Plaintiff was treated differently than similarly situated persons based on her race, citing *Bray,* 506 U.S. at 267-68.

Plaintiff responds that the complaint "clearly states that she has been denied access to the courts by the failure to know and have all of the evidence related to her son's death."  Doc. [162] at 4.  She contends that the complaint "states that Plaintiff and her son were treated differently because of their race.  It can reasonably be inferred from the language in the [complaint] that Plaintiff's claims are, in part, based on the allegation that Defendants' actions against Plaintiff and

her son were based on their race." *Id.* at 7.  Plaintiff's opposition memorandum does not cite any of the complaint's allegations to support her arguments.

### 1.  *Denial of Access to the Courts Claim*

As discussed above in Part IV.D.2 with respect to Plaintiff's § 1983 conspiracy claims against the Police Officer Defendants, the complaint does not allege an underlying claim as to which Plaintiff's access to the courts has been impeded, or an actual injury resulting from Defendants' alleged conspiracy that cannot be remedied through other means such as Plaintiff's claims for money damages in this case and the state court wrongful death action.  *See Harbury,* 536 U.S. at 416, 421.  Plaintiff therefore does not sufficiently allege a conspiracy claim under Section 1983 against the MSHP Defendants based on denial of access to the courts.  Because Plaintiff does not allege a violation of a constitutional right, the MSHP Defendants are entitled to dismissal both for failure to state a claim and on the basis of qualified immunity.  *See Morgan,* 920 F.3d at 523.

### 2.  *Equal Protection Claim*

The complaint fails to allege sufficient facts to indicate Plaintiff was treated differently by the MSHP Defendants than similarly situated persons and that such differential treatment was not rationally related to a legitimate government objective.  *See Koscielski,* 435 F.3d at 901.  The complaint does not allege that Plaintiff was similarly situated to other individuals who received more favorable treatment.  *See id.*  Nor does the complaint allege facts to suggest the MSHP Defendants treated Plaintiff differently than similarly situated individuals of a different race.  *See Bray*, 506 U.S. at 267-68.  The complaint contains no factual allegations sufficient to support a claim that the MSHP Defendants' actions in investigating and reporting on the crash of Decedent's vehicle were based on Plaintiff's or Decedent's race.  *See Clark,* 926 F.3d at 980.  There are no allegations of the Defendants' discriminatory purpose or discriminatory effect.  *See*

*id.* The complaint does not include the words "equal protection" or allege Decedent or Plaintiff's race.

As a result, the complaint's allegations, even when accepted as true and given all reasonable inferences arising therefrom, are insufficient to state a claim for an equal protection violation arising from the MSHP Defendants' actions. Plaintiff therefore fails to state a § 1983 conspiracy claim against the MSHP Defendants based on the denial of Plaintiff's equal protection rights. Because Plaintiff does not allege facts to show the violation of a constitutional right, the MSHP Defendants are entitled to dismissal both for failure to state a claim and on the basis of qualified immunity. *See Morgan,* 920 F.3d at 523.

### 3. *Substantive Due Process Claim*

The MSHP Defendants also move to dismiss Count IV's § 1983 civil conspiracy claims based on an underlying violation of Plaintiff's substantive due process rights. Plaintiff responds she "specifically pled that she has been denied the right to access to the courts due to a cover-up. Thus, she has sufficiently plead [sic] that her substantive due process rights have been violated." Doc. [162] at 7. Plaintiff affirmatively responds that the complaint's factual allegations against the MSHP Defendants relate to a claim for denial of her right to access the courts. *Id.* at 8.

Count IV does not mention substantive due process or the terms typically associated with it, but rather alleges only that the "intent of the conspiracy was to deprive the Plaintiff, either directly or indirectly, of her civil rights." Doc. [142] ¶ 138. The Court finds that Count IV, even when liberally construed, does not assert a claim of civil conspiracy based on a substantive due process violation. "'Substantive due process' analysis must begin with a careful description of the asserted right[.]" *Reno v. Flores,* 507 U.S. 292, 302 (1993); *see also Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir. 2001) (same). Here, the complaint contains no description of the asserted right.

Moreover, even if the complaint were interpreted to assert a substantive due process violation in Count IV, Plaintiff specifically identifies denial of access to the courts as the constitutional right she alleges was violated by the conduct that forms the basis for her § 1983 conspiracy claim.  For the reasons discussed in Part V.B.1 above, Plaintiff's complaint fails to plead a denial of access to the courts claim.  Because Plaintiff does not allege facts to show the violation of a constitutional right, the MSHP Defendants are entitled to dismissal both for failure to state a claim and on the basis of qualified immunity.  *Morgan,* 920 F.3d at 523.

4. *Plaintiff Fails to State Conspiracy Claims Against the MSHP Defendants Under 42 U.S.C. §§ 1985 or 1986*

The MSHP Defendants also move to dismiss Plaintiff's §§ 1985 and 1986 conspiracy claims in Count IV.  As noted in Sections V.B.1 and V.B.2 above, Plaintiff fails to sufficiently plead the denial of her rights to access the courts and equal protection, and thus does not allege a constitutional violation.  *See Askew,* 191 F.3d at 957-59 (where there was no violation of a constitutional right or privilege, summary judgment in favor of the defendant on the § 1985 civil conspiracy claim was proper).  Additionally, she fails to allege that she is a member of a class that suffers from invidious discrimination.  *See Bray,* 506 U.S. at 268-69 (conspiracy under § 1985(3) must be based on allegation of facial or other class-based invidious discriminatory animus).  Therefore, her § 1985 claim fails.

The MSHP Defendants move to dismiss Plaintiff's 42 U.S.C. § 1986 claim on the basis that it must be predicated on a 42 U.S.C. § 1985 claim.  Because a § 1986 claim "is dependent upon a valid § 1985 claim," *Barstad,* 420 F.3d at 887 (8th Cir. 2005), both will be dismissed for failure to state a claim.

53

B.  MSHP Defendants' Motion to Dismiss Count VI—Failure to Intervene

The MSHP Defendants move to dismiss Count IV's § 1983 failure to intervene claim for

failure to state a claim upon which relief can be granted.  Count VI incorporates by reference all

preceding allegations of the complaint and alleges:

> 147.  In the manner described above, during the
> constitutional violations described above, the defendants Broniec,
> Kempke and Teague, all being personally involved in the
> investigation and reporting of the primary conduct of this cause of
> action, stood by, having knowledge of the misconduct, neither one
> intervened to prevent the misconduct of the other.

> 148.  As a result of the Defendant Officers'[15] failure to
> intervene to prevent the violation of Plaintiff's constitutional rights,
> Plaintiff suffered pain and injury, as well as emotional distress.
> These defendants had a reasonable opportunity to prevent this harm
> but failed to and refused to do so.

Doc. [142] at 29.

Citing *Clark v. Ware,* 873 F. Supp. 2d 1117, 1122 (E.D. Mo. 2012), the MSHP Defendants

argue that failure to intervene cases typically involve assertions that an officer uses excessive force

on a plaintiff and a second police officer either assists in placing the plaintiff in a vulnerable

position or fails to intervene to stop the excessive use of force.  They note that the complaint

alleges that the PIT maneuver by Maloy and Jakob was an excessive use of force that caused

Decedent's vehicle to crash, Doc. [142] ¶¶ 53-55, but that there are no allegations that Broniec,

Kempke, or Teague were involved in the chase or were present when the PIT maneuver was

allegedly performed.  All allegations concerning them arise from the post-crash investigation.

Thus, the MSHP Defendants argue they cannot be held liable for failing to intervene to prevent an

excessive use of force.  They also argue that Plaintiff cannot claim that they failed to intervene in

---

[15] The complaint nowhere identifies to which defendants the term "Defendant Officers" refers.  The term is also used in Count V, which is directed against Defendants Maloy and Jakob, and in Count VII, the *Monell* claim against Defendants St. Louis County and Belmar.

constitutional violations occurring after the crash, because she fails to allege facts indicating she was deprived of any constitutionally or federally protected rights after the crash occurred.

Plaintiff responds that Count VI alleges that "by engaging in a sham investigation and a cover-up and by not stopping other Defendants from participating in the cover-up, Defendants have hidden evidence or allowed others to hide evidence from Plaintiff thereby denying her meaningful access to the Courts." Doc. [162] at 9. The MSHP Defendants reply that no matter what label Plaintiff places on her access to the courts claim, she has to plead actual prejudice to a non-frivolous legal claim and seek relief unobtainable in other suits, which she does not do. Therefore, they argue, the failure to intervene claim should be dismissed.

Plaintiff's Memorandum in Opposition clarifies that Count VI does not allege the MSHP Defendants failed to intervene to prevent the alleged excessive use of force by Maloy and Jakob in implementing the PIT maneuver and causing the crash. Indeed, such a claim would be nonsensical based on the facts alleged. Instead, Plaintiff alleges in Count VI that the MSHP Defendants failed to intervene to prevent each other and the "other Defendants" from engaging in the alleged post-crash cover-up and hiding of evidence. Plaintiff's failure to intervene claim in Count VI is therefore another version of her denial of access to the courts claim. For the reasons already discussed, Plaintiff fails to plead the essential elements of an access to courts claim, and the MSHP Defendants are entitled to dismissal of Count VI for failure to state a claim upon which relief can be granted.

In addition, because Plaintiff's failure to intervene claim against them is not based on excessive force, the MSHP Defendants are entitled to qualified immunity. The Eighth Circuit has held that outside of the excessive force context there is no clearly established law regarding a duty to intervene to prevent constitutional violations. *Hess,* 714 F.3d at 1052 (citing *Livers,* 700 F.3d at 360); *Andrews v. Schafer,* 888 F.3d 981, 984, n.4 (8th Cir. 2018). Plaintiff cannot meet her burden

55

to show that the facts alleged, construed in the light most favorable to her, "demonstrate the violation of a constitutional right that was clearly established at the time of the violation." *Church,* 98 F.3d at 832 (burden of proof).  Therefore, Count VI will also be dismissed on the basis of qualified immunity.

Because the Court has dismissed all claims against the MSHP Defendants, it does not reach Defendants Broniec's, Kempke's, and Teague's Supplemental Motion to Dismiss Second Amended Complaint (Doc. 165), which asserts an alternative basis for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join parties required by Federal Rule of Civil Procedure 19.  The Supplemental Motion is denied as moot.

## VI.   Dismissal of Certain Claims Against Defendants Jon Belmar and St. Louis County, Missouri on the Court's Own Motion

After service of process in a fee-paid case, a court may dismiss claims under Federal Rule of Civil Procedure 12(b)(6) on its own motion if the plaintiff has failed to state a claim upon which relief can be granted.  *Murphy v. Lancaster,* 960 F.2d 746, 748 (8th Cir. 1992) (per curiam); *Smith v. Boyd,* 945 F.2d 1041, 1042-1043 (8th Cir. 1991); *see Smithrud v. City of St. Paul,* 746 F.3d 391, 396 n.3 (8th Cir. 2014) ("district court may *sua sponte* dismiss a case pursuant to Rule 12(b)(6)"); *see also Mountain Home Flight Serv., Inc. v. Baxter Cnty., Ark.,* 758 F.3d 1038, 1043 (8th Cir. 2014) (following *sua sponte* dismissal, "as with all other dismissals we review the complaint de novo to determine whether it states a claim.").

The County Defendants—Jon Belmar in his individual and official capacities, and St. Louis County, Missouri—are named in Counts I, II, III, IV, VII, VIII and IX of the complaint.[16]

---

[16] The complaint's caption lists Defendant Jon Belmar as "Jon Belmar, (Individually)," but the body of the complaint alleges that Belmar "is sued in his official and individual capacity."  (Doc. [142] ¶ 9.)  Federal Rule of Civil Procedure 10(a) states in pertinent part, "The title of the complaint must name all the parties[.]"  The complaint's caption fails to include Belmar in his official capacity as a party to this action.

As noted in Section III, above, the County Defendants' Motion to Dismiss does not address the substance of any of Plaintiff's claims.  The Police Officer Defendants moved to dismiss Counts I, II, and IV, however, and Plaintiff was thus on notice of their alleged deficiencies and had the opportunity to respond fully.  For the reasons discussed above, the Court concludes that Plaintiff fails to state a claim as a matter of law as to each of Counts I, II, and IV.  Based on the facts alleged in the complaint it is patently obvious that Plaintiff could not prevail against the County Defendants on any of the claims in those counts.  *See Smith,* 945 F.2d at 1043 (standard for *sua sponte* dismissal).  Thus, in the interest of judicial economy, the Court on its own motion will dismiss the claims in Counts I, II, and IV against the County Defendants for the same reasons and to the same extent as it dismisses the same claims against the Police Officer Defendants.  *Cf. Madewell v. Downs,* 68 F.3d 1030, 1049-50 (8th Cir. 1995) (grant of summary judgment in favor of all defendants was proper even though not all defendants had moved for summary judgment, as nonmoving defendant's liability was founded on same facts and law and all parties had opportunity to fully argue issue).

**VII.   Conclusion**

For the foregoing reasons, Plaintiff's state law wrongful death claims in Counts VIII and IX will be stayed pending resolution of the state court wrongful death action, *Neil v. St. Louis County, Mo.*, No. 18SL-CC04457 (21st Jud. Cir., State of Missouri).

The Court will deny Defendants Jon Belmar and St. Louis County, Missouri's Motion to Dismiss Plaintiff's Second Amended Complaint, (Doc. [148]),n claim splitting and abstention grounds, but on the Court's own motion will dismiss the following claims against Defendants Belmar and St. Louis County for failure to state a claim upon which relief can be granted:  Count I—Fourth Amendment Unreasonable Seizure, Fifth Amendment Due Process, Eighth Amendment Cruel and Unusual Punishment, and Fourteenth Amendment Right to Life/Right to Bodily

Integrity based on unreasonable seizure and excessive force; Count II—Fourth Amendment Excessive Force; and Count IV—Civil Conspiracy pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.

The Court will deny Defendants Maloy and Jakob's Motion To Dismiss Plaintiff's Second Amended Complaint (Doc. [144]) to the extent it seeks dismissal of Plaintiff's wrongful death claims and dismissal of the complaint on the grounds of claim splitting, abstention, and the first-filed rule, but the Court will grant the same motion as to all claims against Maloy and Jakob in Counts I, II, IV, and V, except the failure to provide emergency medical care claim in Count I, which was not addressed in the Motion to Dismiss.

The Court will grant Defendants Broniec, Kempke, and Teague's Motion to Dismiss Second Amended Complaint (Doc. [146]) in all respects, dismissing Counts IV and VI against them, and will deny as moot the same Defendants' Supplemental Motion to Dismiss Second Amended Complaint (Doc. [165]).

The remaining claims in this action are (1) failure to provide emergency medical care under 42 U.S.C. § 1983 in Count I against Defendants Maloy, Jakob, Belmar, and St. Louis County; (2) negligent hiring, training, and supervision under 42 U.S.C. § 1983 in Count III against Defendants Belmar and St. Louis County; (3) *Monell*[17] municipal liability claims under 42 U.S.C. § 1983 in Count VII against Defendants St. Louis County and Belmar in his official capacity; and (4) the stayed state law wrongful death claims in Counts VIII and IX.

---

[17] *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658 (1978).

Accordingly,

**IT IS HEREBY ORDERED** that that Plaintiff's state law wrongful death claims in Counts VIII and IX are **STAYED** pending resolution of the state court wrongful death action, *Neil v. St. Louis County, Mo.*, No. 18SL-CC04457 (21st Jud. Cir., State of Missouri).

**IT IS FURTHER ORDERED** that Plaintiff shall notify the Court in writing within ten (10) days after the entry of judgment or other resolution of the state court wrongful death action.

**IT IS FURTHER ORDERED** that Defendants Jon Belmar and St. Louis County, Missouri's Motion to Dismiss Plaintiff's Second Amended Complaint on the basis of claim splitting and abstention (Doc. [148]) is **DENIED**.

**IT IS FURTHER ORDERED** that on the Court's own motion, the following claims against Defendants Jon Belmar and St. Louis County are **DISMISSED** for failure to state a claim upon which relief can be granted: Count I—Fourth Amendment Unreasonable Seizure, Fifth Amendment Due Process, Eighth Amendment Cruel and Unusual Punishment, and Fourteenth Amendment Right to Life/Right to Bodily Integrity based on unreasonable seizure and excessive force; Count II—Fourth Amendment Excessive Force; and Count IV—Civil Conspiracy pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.

**IT IS FURTHER ORDERED** that Defendants Maloy and Jakob's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. [144]) is **GRANTED in part** and **DENIED in part**; the Motion is **DENIED** to the extent it seeks dismissal of Plaintiff's wrongful death claims and dismissal of the complaint on the grounds of claim splitting, abstention, and the first-filed rule; and it is **GRANTED** as to all claims against Maloy and Jakob in Counts I, II, IV, and V for failure to state a claim upon which relief can be granted and on the basis of qualified immunity, except the failure to provide emergency medical care claim in Count I.

**IT IS FURTHER ORDERED** that Defendants Mike Broniec's, Paul Kempke's, and Brock Teague's Motion to Dismiss Second Amended Complaint (Doc. [146]) is **GRANTED** for failure to state a claim upon which relief can be granted as to Counts IV and VI and also on the basis of qualified immunity as to Count VI.

**IT IS FINALLY ORDERED** that Defendants Broniec's, Kempke's, and Teague's alternative Supplemental Motion to Dismiss Second Amended Complaint pursuant to Rule 12(b)(7) (Doc. [165]) is **DENIED as moot**.

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 17th day of September, 2020.

_____

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE