UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLARA CHEEKS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 4:18-cv-2091-SEP |
| ) | |
| JON BELMAR, et al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

Before the Court are motions for summary judgment filed by Defendants Mark Jakob and Frank K. Maloy, Doc. [218], and Defendants Jon Belmar and St. Louis County, Doc. [242].[1] The motions are fully briefed. For the reasons set forth below, Jakob and Maloy's motion is denied, and Belmar and St. Louis County's motion is granted.

## BACKGROUND

Plaintiff Clara Cheeks filed this action on December 17, 2018, alleging several claims on behalf of her son, Mikel Neil, who died on August 10, 2018, from injuries sustained in a motor vehicle incident allegedly involving St. Louis County police officers Alex Maloy and Mark Jakob.[2] *See* Docs. [1], [250] ¶¶ 1, 2. After the Court's September 17, 2020, Memorandum and Order, the following federal claims remain:[3]  (1) Count I against Defendants Jakob and Maloy for failure to provide emergency aid under 18 U.S.C. § 1983;[4] (2) Count III against Defendants

---

[1] The Court will refer to Defendants Maloy and Jakob as "Officer Defendants" and Defendants Belmar and St. Louis County as "County Defendants."

[2] This action was originally brought against Alex Maloy. Some time after filing, Alex Maloy passed away and his father, Frank Maloy, was substituted as the proper party. *See* Fed. R. Civ. P. 25(a).

[3] In addition to the three remaining federal claims, the Court stayed Plaintiff's state law wrongful death claims, Counts VIII and IX, pending an outcome in the state court wrongful death action, in which Plaintiff has intervened. Doc. [186] at 5, 13.

[4] Although Officer Defendants fault Plaintiff for failing to amend her Complaint after the September 17, 2020, *see* Doc. [219] at 2019, Memorandum and Order, the Court finds that Plaintiff was not required to do so in order to maintain her Count I. In its previous Order, the Court clarified the constitutional basis of Plaintiff's Count I and identified the Fourteenth Amendment's deliberate indifference standard as the proper basis for Plaintiff's claim. Doc. [186] at 23-25. The Court did not require Plaintiff to file an amended complaint; rather, it "call[ed] to the parties' attention" that the Fourteenth Amendment recognizes a claim as alleged in Count I. *Id.* at 25.

1

Belmar and St. Louis County for negligent hiring, training, and supervision under 18 U.S.C. § 1983; and (3) Count VII against Defendants Belmar and St. Louis County, alleging liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

On August 10, 2018, at approximately 9:30 PM, Mikel Neil crashed into a tree on Airport Road in St. Louis County, Missouri. Doc. [250] ¶ 1. Neil died at the scene of the accident from blunt trauma caused by the crash. *Id.* ¶ 2. The parties dispute the circumstances that led to the accident and Neil's death. Plaintiff contends that Maloy and Jakob performed a "PIT" maneuver on Neil's car, which caused Neil to "go into a spin" and crash into the tree. Doc. [248] ¶ 1. The Officer Defendants deny that a PIT maneuver was used, *see* Doc. [254] at 9-10, and that Defendant Jakob observed the crash.[5] Doc. [248] ¶ 6. Plaintiff believes that evidence—including video footage from a nearby liquor store and testimony from Lieutenant O'Neill and Defendant Belmar about the incident—suggests that Maloy and Jakob were or should have been aware of the crash. *Id.*

Although the officers did not render aid or call for medical assistance, emergency responders did arrive at the scene after a witness, Ryane Vann, called 911.[6] *See id.* ¶ 4; Doc. [219-4] at 27:7-21. According to Ms. Vann, she called for assistance no later than 30 seconds after the crash. Doc. [219] at 11 (citing Doc. [219-4] at 51:17-52:8). Officer Defendants contend that, because emergency responders were called to the scene within 30 seconds of the incident regardless of their failure to render aid, there was nothing more the officers could have done to "change the outcome" of the accident (i.e., to save Neil's life). Docs. [248] ¶ 4; [250] ¶ 3. They argue that approaching the vehicle at the time of the crash would not have "changed the outcome" either, as Maloy and Jakob were not "equipped with anything" that could have saved Neil. Doc. [248] ¶ 5. Plaintiff asserts that Maloy and Jakob did observe the crash, *id.* ¶ 6, and that "there [was] no way" for them to determine, at the time of the crash, whether rendering aid would have been futile. *Id.* ¶ 5; Doc. [250] ¶ 3. Moreover, Plaintiff contends that, despite how terrible the car accident may have appeared—and even if it gave the officers reason to

---

[5] The Statement of Uncontroverted Material Facts does not explicitly state whether Maloy observed the crash. Doc. [248] ¶ 6 (Defendants stating only that Jakob did not observe Neil's vehicle crash). This is presumably due to Maloy's death early in this litigation. Based on Maloy's termination letter, Doc. [244-3] at 4, he also denied witnessing the crash.

[6] Plaintiff contends that it took approximately five minutes for responders to arrive. Doc. [248] ¶ 4. Defendants do not respond to that allegation.

2

believe the passengers were deceased—they still had an obligation to stop and attempt to render aid.  Doc. [248] ¶ 5.

In Counts III and VII, Plaintiff brings claims against Jon Belmar and St. Louis County (County Defendants).  County Defendants contend that they were not aware of previous instances in which Maloy or Jakob failed to provide emergency medical care before the incident on August 10, 2018.  Doc. [250] ¶ 4.  Moreover, County Defendants note—and Plaintiff does not deny—that St. Louis County had a policy that officers were required to render emergency aid.  *Id.* ¶ 6; *see* Docs. [244-3] at 4, [244-4] at 4.  County Defendants further argue that Maloy and Jakob were terminated from the St. Louis County Police Department, in part for failing to render aid to Neil after the crash.  *Id.* ¶ 5.  In response, Plaintiff levels a series of accusations against County Defendants, primarily directed at Defendant Belmar's and other St. Louis County Police Department officials' actions at the scene of the crash and during the investigation of the incident.  *See id.* ¶¶ 4-6.  Specifically, Plaintiff describes the County's attempt to "cover-up" Jakob's and Maloy's actions and claims that they were terminated "only after efforts were made to create a narrative that the officers . . . were unaware of the crash, thus obviating the need to render aid[.]"  *Id.* ¶ 5.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted).  The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'"  *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (alteration in original) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)).

Motions for summary judgment in qualified immunity cases are "unique in that the court should not deny summary judgment any time a material issue of fact remains on the constitutional violation claim . . . ." *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (cleaned up) (quoting *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 671 (8th Cir. 2007)). "Because qualified immunity 'is an *immunity from suit* rather than a mere defense to liability[,] . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). Therefore, in a qualified immunity case, the court must "take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party so long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *Id.* at 1161-62 (cleaned up) (quoting *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007)); *see also Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant . . . ."); *see also, e.g.*, *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018) (construing the facts in the light most favorable to plaintiffs on review of a district court's summary judgment denial of qualified immunity).

## DISCUSSION

**I.     Defendants Jakob and Maloy are not entitled to qualified immunity from Count I.**

The Officer Defendants argue that they are entitled to qualified immunity from Plaintiff's Count I for failure to render aid pursuant to § 1983. Doc. [219] at 12. "Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known." *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, a "[q]ualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (quoting *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014)) (quotation marks omitted). "Unless both of these questions are answered affirmatively, [a defendant] is entitled to qualified immunity." *Id*. at 523 (quoting *Nord*, 757 F.3d at 738).

4

### A.  A reasonable jury could find that Defendants violated Neil's constitutional right.

Section 1983 of Title 42 of the United States Code provides in relevant part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights," but affords "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Thus, in considering a § 1983 claim, a court must "identify the specific constitutional right allegedly infringed." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

The constitutional basis for Plaintiff's Count I arises under the Due Process Clause of the Fourteenth Amendment.  Doc. [186] at 23-25.  The Due Process Clause does not provide an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (collecting cases). The Constitution does, however, "in certain limited circumstances . . . impose[] upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198.  For example, "the Eighth Amendment's prohibition against cruel and unusual punishment . . . requires the State to provide adequate medical care to incarcerated prisoners." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  That principle has been extended to apply, through the Fourteenth Amendment, to pretrial detainees and suspects in police custody who have been injured while being apprehended by the police.  *Id.*; *see City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)) ("[T]he due process rights of [an individual apprehended by the police] are at least as great as the Eighth Amendment protections available to a convicted prisoner."); *Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010) (quoting *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007)) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment.").

The Eighth Circuit has analyzed failure to render medical aid claims under a deliberate indifference standard.  *See, e.g.*, *Tagstrom v. Enockson*, 857 F.2d 502, 503-04 (8th Cir. 1988).  A deliberate indifference claim "has both an objective and a subjective component." *McRaven v.*

5

*Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)). "The objective component requires a plaintiff to demonstrate an objectively serious medical need"; "the subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id*. (quoting *Vaughn*, 557 F.3d at 908). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The subjective component—whether a defendant was deliberately indifferent to a serious medical need—requires more than mere negligence. Rather, it requires a state of mind similar to criminal recklessness. *Nur v. Olmsted Cnty.*, 563 F. Supp. 3d 946, 965 (D. Minn. 2021) (quoting *Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016)). "Such a mental state can be inferred from facts that demonstrate the response to the medical need was obviously inadequate" or by showing that a defendant "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[d] with prescribed treatment . . . ." *Id*. (citing *Estelle*, 429 U.S. at 104-05) (internal quotation marks omitted).

      Defendants argue that their conduct cannot have violated Neil's constitutional rights for two reasons: (1) Plaintiff cannot demonstrate that the subjective component of her deliberate indifference claim is satisfied because there is no evidence that Maloy or Jakob witnessed Neil's vehicle crash, and (2) Maloy and Jakob could not have violated Neil's right where the alleged deliberate indifference "did not cause any detrimental effect." Doc. [219] at 3-4. Those arguments rely heavily on factual claims that the parties dispute—specifically, whether Maloy and Jakob were aware of the crash and whether they could have done anything to prevent Neil's death.

      In support of her account that the Officer Defendants were aware of the crash, Plaintiff points to the depositions of Jon Belmar, Lorenzo Johnson, and Lieutenant O'Neill. *See* Doc. [248] ¶ 6. Belmar testified that Maloy and Jakob "either did or should have seen the accident," and "did not stop." Doc. [250-2] at 55:10-56:3. Johnson testified that he witnessed Jakob and Maloy's police car bump the side of Neil's car, causing it to go into a spin. Doc. [250-7] at

15:23-17:1.[7]  O'Neill testified that video footage from a nearby liquor store showed a county police car driving by without its lights on in the distance right after people came out of the store in response to hearing the crash, Doc. [250-6] at 52:3-56:23; that he asked Maloy and Jakob only questions "that would not violate their due process because [he] suspected them of wrongdoing," *id.* at 44:2-14; and that the car in which Maloy and Jakob arrived at the scene about an hour and fifteen minutes after the crash was not the vehicle they had used to pursue Neil, *id.* at 46:3-12.

Defendants deny that Maloy and Jakob performed a PIT maneuver on Neil's vehicle.[8] Doc. [254] at 8.  They point to Sergeant Paul Kempke's testimony, video evidence from a school on the roadway where the alleged maneuver occurred, and the opinion of Fred Semke, an accident reconstructionist, all indicating that there was no PIT maneuver or other contact between the officers' vehicle and Neil's vehicle.  *Id.* (citing Docs. [254-5], [254-6], [255]).  That evidence, they contend, directly contradicts the testimony of Plaintiff's purported eyewitness, Lorenzo Johnson, who claims that he saw such a maneuver.  Defendants also deny that the officers witnessed the crash.  Doc. [248] ¶ 6.  Jakob denies observing the crash, witnessing anything that indicated a crash, or hearing anything that sounded like a crash.  Doc. [219-6] at 79:7-80:6, 211:11-23, 226:5-14.  And Defendants claim Plaintiff has produced no evidence demonstrating that Maloy or Jakob had actual knowledge of the crash.[9]  Doc. [254] at 10.

---

[7] Whether Defendants performed a PIT maneuver on Neil's vehicle is not itself the basis of any remaining claim.  Still, Plaintiff cites evidence that the Officer Defendants performed such a maneuver as probative of an element of the failure to render aid claim—viz., whether or not the Officer Defendants knew that Neil's vehicle had crashed.  The Court considers evidence relating to whether such a maneuver was performed for that limited purpose only.

[8] Defendants object to Plaintiff's reliance on the testimony of Geoffrey Alpert in relation to the alleged PIT maneuver.  Doc. [254] at 8.  Because the Court finds that Plaintiff has made a submissible case for a constitutional violation even without Alpert's testimony, the admissibility of that testimony will be addressed separately in response to Defendants' motions to exclude.  Docs [229], [232].

[9] The Court rejects Defendants' argument that Plaintiff has produced no evidence of "actual knowledge" that could satisfy the subjective component of a deliberate indifference claim.  *See* Docs. [219] at 11, [254] at 10.  A reasonable juror could find, based on the circumstantial evidence presented by Plaintiff— including an eye-witness account of the officers' car coming into contact with Neil's car—that Maloy and Jakob had actual knowledge of Neil's serious medical need and disregarded it.  *Jones*, 512 F.3d at 481-82 (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)) ("The determination that prison officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious."); *see also Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (quoting *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013)) (the subjective component of a deliberate indifference claim "may be established through circumstantial evidence, as 'a factfinder may determine

7

Viewing the facts in the light most favorable to Plaintiff, there is a genuine dispute of material fact as to whether Maloy and Jakob were aware of the crash as it happened. *See Anderson*, 477 U.S. at 248. Plaintiff's factual allegations "are not so blatantly contradicted by the record . . . that no reasonable jury could believe them." *O'Neil*, 496 F.3d at 917 (cleaned up) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Accordingly, the Court may not resolve the disputed factual questions on summary judgment. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

Defendants' second argument for summary judgment—i.e., that Maloy and Jakob did not violate Neil's constitutional right because their failure to call 911 did not have any detrimental effect in light of Ms. Vann's call for medical assistance within 30 seconds of the crash—fails as a matter of law. Doc. [219] at 11. According to Defendants, even if Maloy or Jakob witnessed the crash and could have called for help immediately, the fact that only 30 seconds elapsed before someone else called for such assistance means that the Officer Defendants cannot have violated Neil's right to be rendered medical aid. *Id.* That argument rests on a misreading of Eighth Circuit precedent.

Defendants point to *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). Doc. [219] at 9. In *Laughlin*, the plaintiff called for prison officials at 7:30 AM because he believed he was having a heart attack, but no one responded to his call. *Id.* at 928. He called again at 8:15 AM, and a guard responded at 8:35 AM but did not call for assistance, despite the plaintiff's assertions that he was having a heart attack. *Id.* Twenty minutes later, the plaintiff informed a different guard that he was having a heart attack, and that guard called for help, which did not arrive for 15 more minutes. *Id.* The plaintiff was given an antacid and returned to his cell. *Id.* Later that afternoon, the plaintiff was admitted to the prison infirmary, and then to the hospital, where he was diagnosed with myocardial infarction and received an angioplasty. *Id.* The Eighth Circuit affirmed summary judgment in favor of the prison officials, finding that, to prevail on a delay in medical treatment claim, the plaintiff must show that "the deprivation alleged was objectively serious" and that "the prison official was deliberately indifferent to the inmate's health or safety." *Id.* at 929 (citing *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995),

---

that a defendant was actually aware of a serious medical need but deliberately disregarded it, from the very fact that the [medical need] was obvious'").

8

*abrogation on other grounds recognized by Reece v. Groose*, 60 F.3d 487, 492 (8th Cir. 1995)). In that context, the Eighth Circuit noted that "the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.'" *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogation on other grounds recognized by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002)). The court found that the plaintiff "offered no evidence establishing that any delay in treatment had a detrimental effect" on his treatment, and therefore he failed to "raise a genuine issue of fact on an essential element of his claim." *Id.*

The Eighth Circuit recently applied this principle in *Redmond v. Kosinski*, 999 F.3d 1116 (8th Cir. 2021), in which a prisoner alleged that prison medical officials were deliberately indifferent to his serious medical needs by delaying treatment of a sore on his foot, resulting in the amputation of his leg below the knee. *Id.* at 1118-19. The plaintiff argued that the defendants "delayed his treatment . . . and that the detrimental effect [was] . . . 'obvious to the layperson[.]'" *Id.* at 1120 (citing *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997)). As an initial matter, the Eighth Circuit appeared to make a distinction between situations in which defendants have allegedly done *nothing* to treat a serious medical need and situations, as in *Redmond*, where the plaintiff alleges conduct akin to *negligent* medical treatment. *See id.* at 1120-21 ("Redmond does not allege the defendants delayed all treatment, but that they failed to provide the proper treatment at the proper time to prevent his wound from becoming infected and his condition from worsening."). In the latter context, the Court confirmed that "the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment,'" *id.* at 1121 (quoting *Laughlin*, 430 F.3d at 929) (emphasis in original), and that the prisoner bears the burden of presenting evidence that "the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Id.* (quoting *Holden*, 663 F.3d at 342). Applying that standard, the court found that the plaintiff's "records reflect[ed] a complex medical situation with an unfortunate result." *Id.* Specifically, the Court noted that the plaintiff's injury was not "so obvious that a layperson would easily recognize" his medical need, and that a jury could not find that the officials' conduct was "grossly incompetent or inadequate" without additional medical evidence demonstrating causation. *Id.*

Defendants' argument that such a "detrimental effect" standard applies here is unpersuasive. Despite Defendants' apparent attempts to construe Plaintiff's claim as a "delay in

9

treatment" claim, the Court has already determined that her claim arises from Defendants' failure to render aid.  Doc. [186] at 58.  Both *Laughlin* and *Redmond* note that "the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment" when an inmate asserts a claim that a *delay in medical care* violates his constitutional rights.  *Laughlin*, 430 F.3d at 929 (quotation marks omitted); *Redmond*, 999 F.3d at 1121 (quotation marks omitted).  Here, Plaintiff does not allege that Maloy and Jakob "ignored an acute or escalating situation," as did the plaintiffs in both *Laughlin* and *Redmond*.  *Redmond*, 999 F.3d at 1121 (quoting *Holden*, 663 F.3d at 342).  Rather, she alleges that they did *nothing* in response to a manifestly serious medical need.

Moreover, the upshot of *Laughlin* and *Redmond* appears to be that delay-of-treatment claims involving "sophisticated medical question[s]," which are not "within the common understanding of the jury or the court" or are not "so obvious that a layperson would easily recognize" the need for medical treatment, require additional evidence of causation or a "detrimental effect" resulting from the official's misconduct.  *Id.* at 1121; *see Laughlin*, 430 F.3d at 929.  The facts of this case are much different than those of *Laughlin* and *Redmond*.  Here, Maloy and Jakob allegedly witnessed a vehicle crash into a tree at a high speed, which resulted in the death of two passengers.  Whether emergency medical assistance was needed under such circumstances is far from a "sophisticated medical question."  It is difficult to imagine in what circumstances one's medical needs would be "so obvious that even a layperson would easily recognize the necessity for a doctor's attention," if a high-speed car crash does not qualify.  *McRaven*, 577 F.3d at 982 (quoting *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008)).

Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Maloy and Jakob were aware of the crash, and that their failure to call for emergency medical assistance violated Neil's constitutional right under the Fourteenth Amendment.  *See Anderson*, 477 U.S. at 248.  Accordingly, Plaintiff has satisfied the first prong of the qualified immunity inquiry for purposes of summary judgment.  *See Morgan*, 920 F.3d at 523.

### B.  Neil's right to be rendered aid was clearly established at the time of the crash.

Although "[q]ualified immunity is an affirmative defense for which the defendant carries the burden of proof," the "plaintiff . . . must demonstrate that the law is clearly established."

10

*Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002) (citing *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Although case law directly on point is not necessary to demonstrate that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 8 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). In the context of qualified immunity, clearly established rights "should not be defined at a high level of generality." *White*, 137 S. Ct. at 552 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (quotation marks omitted). Rather, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established . . . in light of the specific context of the case[.]" *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft*, 563 U.S. at 742 (quotation marks omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (quotation marks omitted)). Thus, to satisfy the second prong of the qualified immunity analysis, Plaintiff must point to existing precedent that places it beyond debate that the Officer Defendants' *particular* conduct—construed in the light most favorable to her—violated a clearly established right *in light of the specific context of this case*.

      Plaintiff points to a 1988 case in which the Eighth Circuit held that an officer had not failed to render sufficient medical care to someone injured in an accident after a high-speed chase where the officer had "called an ambulance . . . immediately upon seeing the accident . . . and other officers involved in the chase were on the scene quickly and watched over" the injured person. *Tagstrom*, 857 F.2d at 503-04. According to Plaintiff, *Tagstrom* stands for the proposition that "[a]n officer performs his or her duty regarding first aid by 'immediately calling an ambulance.'" Doc. [249] at 8 (quoting *Tagstrom*, 857 F.2d at 504). Therefore, Plaintiff argues, Maloy's and Jakob's failure to call 911 immediately after the crash violated Neil's clearly established right.

      Defendants respond that Maloy and Jakob were not required by Eighth Circuit precedent to provide medical aid to Neil themselves. Doc. [254] at 4. That appears to be true. *See Tagstrom*, 857 F.2d at 504 (an officer has no "affirmative duty to render medical assistance himself, such as giving mouth-to-mouth resuscitation or CPR"). But *Tagstrom* makes clear that, under very similar circumstances, an officer does have an obligation to render aid, which is

11

satisfied "so long as he has summoned the necessary medical help." *Teasley v. Norler*, 548 F. Supp. 2d 694, 709 (E.D. Mo. 2008) (citing *Tagstrom*, 857 F.2d at 504; *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006); *Wilson v. Meeks*, 52 F.3d 1547, 1556 (10th Cir. 1995); *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1097 (6th Cir. 1992)). That principle is consistent with other Eighth Circuit cases, which, under varying circumstances, hold that an officer runs afoul of the Eighth or Fourteenth Amendment where she does nothing in response to a manifestly serious medical need. *See, e.g.*, *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001) ("Based on the obvious and serious nature of [the plaintiff's] condition, the corrections officers' alleged failure to even approach [plaintiff] during the maximum 10-minute period would rise to a showing of deliberate indifference."). And it is also consistent with the Supreme Court's admonition that an officer who "intentionally den[ies]" medical care to inmates violates the Eighth Amendment. *Estelle*, 429 U.S. at 105.

Viewing the facts in the light most favorable to Plaintiff, Maloy and Jakob witnessed Neil's car crash into a tree and then fled the scene without calling for medical aid. Based on the precedent discussed above, Plaintiff has made a sufficient showing that a reasonable officer in the officers' position would have been on notice that the failure to call for medical assistance was a violation of Neil's right to be rendered aid. *See Rivas-Villegas*, 142 S. Ct. at 7. Accordingly, Plaintiff has satisfied the second prong of the qualified immunity analysis.

Because Plaintiff has made a sufficient showing on both steps of the qualified immunity inquiry, *Morgan*, 920 F.3d at 523, the Officer Defendants are not entitled to qualified immunity from Count I.

II. **Defendants Jon Belmar and St. Louis County are entitled to summary judgment as to Counts III and VII.**

Defendants Belmar and St. Louis County (County Defendants) move for summary judgment on Count III, which alleges negligent hiring, training, and supervision, and Count VII, which alleges municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), for the alleged constitutional violations committed by Maloy and Jakob. Plaintiff argues that the "core" of her claims is that "an unofficial custom, pattern/practice was the moving force behind [County Defendants'] unconstitutional conduct of excessive force, deliberate indifference to obvious medical need, failure to train or supervise, [and] negligence per se against [Plaintiff]." Doc. [251] at 9. The precise nature of Plaintiff's

12

claims is difficult to discern. The Court understands her to be alleging supervisory liability against Belmar under § 1983 for failure to train or supervise and *Monell* liability against the County based on an unconstitutional policy and/or custom and failing to train or supervise its employees.[10]

At the outset, it should be noted that Plaintiff can maintain claims under § 1983 only for deprivations of rights secured by federal law or the United States Constitution. *See* 42 U.S.C. § 1983. Thus, Plaintiff's state law negligence per se claim cannot be a basis for liability against County Defendants; nor can any of her dismissed constitutional allegations. The Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."[11] *Mahn v. Jefferson Cnty., Mo.*, 891 F.3d 1093, 1099-1100 (8th Cir. 2018) (quoting *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011)). Thus, the only question before the Court is: Assuming *arguendo* that Maloy and Jakob committed unconstitutional acts by failing to render aid at the time of the crash, may County Defendants may be held liable for those acts under § 1983?

### A. Supervisory Liability under § 1983 claim as to Defendant Belmar

Plaintiff appears to argue that Belmar is liable in a supervisory capacity for his officers' failure to render aid based on his failure to adequately train or supervise them in his capacity as Chief of Police. Belmar may not be held liable for Maloy's and Jakob's actions based on respondeat superior. *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (citing *Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011)); *see also Madewell v. Roberts*, 909 F.2d 1203, 1208

---

[10] A claim for failure to supervise "require[s] the same analysis" as a claim for failure to train. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998)). The Eighth Circuit employs a slightly different standard for § 1983 claims related to the hiring of an offending officer. *See Conner v. St. Louis Cnty., Mo.*, 2016 WL 4538534, at *3 (E.D. Mo. Aug. 31, 2016) (citing *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013)). Because Plaintiff's memorandum refers only to Defendants' "failure to train and supervise," Doc. [251] at 9, and there is no indication that Plaintiff challenges Belmar's hiring decisions with respect to Jakob and Maloy, the Court will consider only the failure to train and supervise claims.

[11] "There need not be a finding that a municipal employee is liable in his or her individual capacity" to find a municipality liable for the employee's underlying conduct. *Webb v. City of Maplewood*, 889 F.3d 483, 488 (8th Cir. 2018) (cleaned up) (quoting *Moyle v. Anderson,* 571 F.3d 814, 818 (8th Cir. 2009)). But an employee must have committed an unconstitutional act. *Id.* at 488 (quoting *Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005)). The Court already determined that Officer Defendants are not entitled to qualified immunity but left for the fact finder to determine whether Neil's constitutional rights were violated. Without taking a position as to the constitutionality of Maloy's and Jakob's actions, the Court will assume, for purposes of evaluating municipal liability, that the officers' underlying conduct amounted to an unconstitutional act.

13

(8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). He may be held liable for failure to train or supervise Maloy and Jakob only if he: "(1) had 'notice of a pattern of unconstitutional acts committed by subordinates'; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take 'sufficient remedial action'; (4) proximately causing injury to [Neil]." *Livers*, 700 F.3d at 355 (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)). The standard is a "rigorous" one and "requires proof that the [defendant] had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right." *Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 624 (8th Cir. 2021) (quoting *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015)). Moreover, the misconduct the supervisor was aware of "must be very similar to the conduct giving rise to liability." *Id.* (quoting *Krigbaum*, 808 F.3d at 340)).

Construing the facts in the light most favorable to Plaintiff, the record contains no grounds for a reasonable inference that Belmar had notice of, or was deliberately indifferent to, a pattern of unconstitutional conduct Maloy or Jakob. Belmar satisfies his burden of pointing to evidence in the record demonstrating an absence of genuine dispute as to whether he was aware of instances in which Maloy or Jakob failed to provide emergency medical care before August 10, 2018. *Celotex Corp.*, 477 U.S. at 323. Specifically, he cites letters he sent to Maloy and Jakob on November 23, 2018, describing the reasons for their termination, including their failure to "take appropriate action" by rendering aid to Neil or calling for emergency responders. Docs. [244-3] at 4; [244-4] at 4. Belmar's letter to Maloy also describes an instance of "previous discipline" related to an off-duty incident involving alcohol. Doc. [244-3] at 4. Plaintiff is correct that the letters do not state that Belmar did *not* have prior knowledge of unconstitutional acts, but the fact that the letters reference previous disciplinary action without noting any previous instances of failure to render aid does support Belmar's claim that he lacked knowledge of any such conduct. Doc. [257] ¶ 4. Belmar also notes that the letters informed Maloy and Jakob that their termination was based, in part, on failing to provide medical care to Neil, supporting an inference that the officers would have been disciplined for earlier instances of similar failures, and that such disciplinary history would have been discussed in the letter as a basis for their termination. *See id.*

14

In response to Belmar's showing, based on the termination letters, that he had no notice of the officers' previous failures to render appropriate emergency aid, Plaintiff cites 36 factual allegations relating to the conduct of Belmar and other County employees following the crash. Doc. [250] ¶ 4.  None of the cited allegations is relevant to Plaintiff's § 1983 claim for failure to train or supervise.  Evidence of Belmar's conduct *after* the crash—even if it was wrongful—is not probative of whether he had *prior* notice of Maloy or Jakob failing to render aid, and if so, whether he acted with deliberate indifference to such failures.  *See Livers*, 700 F.3d at 355 (quoting *Andrews*, 98 F.3d at 1078).  Plaintiff does not even attempt such an argument in her memorandum in opposition to the Motion for Summary Judgment.

Plaintiff has not met her burden to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial,'" *Farver*, 931 F.3d at 811 (quoting *Wingate*, 528 F.3d at 1079), as to whether Belmar had notice that his training or supervision of the Officer Defendants was inadequate, *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216-17 (8th Cir. 2013).  Therefore, Belmar is entitled to summary judgment as to Plaintiff's § 1983 claim for failure to supervise or train.

### B.  Municipal liability under § 1983 as to St. Louis County under *Monell*.

Plaintiff's Count VII alleges that the County is liable for Officer Defendants' violation of Neil's rights because the violation was the result of an unconstitutional County policy or unofficial custom.  *See* Docs. [251] at 9; [142] ¶ 152.  Count III for failure to train or supervise is also asserted against the County.

"To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity."  *Moyle*, 571 F.3d at 817 (citing *Monell*, 436 U.S. at 690-92).  Showing an official policy or an unofficial custom is not the only method of proving municipal liability; even if a plaintiff cannot show a widespread custom, the government might be liable for its failure to act.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (local government may be liable for failure to train or supervise police use of force if the city's failure to act demonstrated "deliberate indifference to the rights of persons with whom the police come into contact").  Thus, three methods for establishing municipal liability have emerged: "[P]laintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Aldridge v. City of St. Louis*, 2019 WL

15

1695982, at * 9 (E.D. Mo. Apr. 17, 2019) (citing *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018)).

"Policy" refers to an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016); *see also Russell v. Hennepin Cnty.*, 420 F.3d 841, 847 (8th Cir. 2005) (quoting *Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669, 674 (8th Cir. 2004)) ("A 'policy' is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question."). For a policy that is unconstitutional on its face, a plaintiff does not need to adduce other evidence beyond "a statement of the municipal policy and its exercise." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers." *Id*. at 390.

A plaintiff may establish municipal liability through a "custom" by demonstrating:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (quoting *Thelma D. ex rel. Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 932-33 (8th Cir. 1991)).

Finally, to establish deliberate indifference sufficient for a failure to train or supervise claim, a plaintiff must show "[a] pattern of similar constitutional violations by untrained employees[.]" *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Any claim against the County for failure to train or supervise fails for the same reason that it fails against Belmar. The record is devoid of evidence that the County had notice that its training or supervision of its officers was inadequate, much less that it would result in a

constitutional violation. *See Aldridge*, 2019 WL 1695982, at *11 (quoting *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018)); *see also Atkinson*, 709 F.3d at 1216-17 (quoting *Brown*, 520 U.S. at 411) ("Absent some form of notice, the city cannot be deliberately indifferent to the risk that its training or supervision of [an officer] would result in 'a violation of a particular constitutional or statutory right.'").

Nor can the Court find any evidence in the record that St. Louis County had an official policy or unofficial custom that resulted in Neil's constitutional rights being violated. Plaintiff has adduced no evidence that St. Louis County had a policy or custom that explicitly instructed or encouraged officers *not* to provide aid. In fact, Plaintiff agrees that the opposite is true: St. Louis County's official policy requires that officers provide emergency medical care, and Maloy and Jakob were terminated, in part, for failing to do so. Doc. [243] at 8; Doc. [250] ¶ 6 (citing Docs. [244-3] at 4, [244-4] at 4, [244-5] at 102:23-103:3). Plaintiff argues that "every effort was made to create a narrative that [Jakob and Maloy] were unaware of the crash, thus obviating the need to render aid." *Id.* But again, events that took place after the incident are not relevant, as they do not bear on whether a preexisting policy or custom led to the alleged constitutional violation. The only constitutional violation still at issue in this case is the Officer Defendants' alleged failure to render aid, and Plaintiff points to no evidence that any such failure was caused by a County policy or custom. *See* Doc. [251] at 9-10. Therefore, Plaintiff has failed to raise a genuine issue of material fact for trial, and St. Louis County is entitled to summary judgment on Plaintiff's Count III and Count VII.

## Conclusion

Plaintiff has demonstrated that Neil's right to be rendered aid was clearly established at the time of the incident, and a reasonable jury could conclude that Officer Defendants' conduct violated that right. Therefore, the Officer Defendants are not entitled to qualified immunity on summary judgment. But Plaintiff points to no record evidence that could support holding County Defendants liable for a constitutional violation under § 1983. Accordingly, County Defendants are entitled to judgment as a matter of law. Plaintiff's remaining state law wrongful death claims will remain stayed until the resolution of the state case involving the same claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Mark Jakob and Frank K. Maloy's Motion for Summary Judgment, Doc. [218], is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants Jon Belmar's and St. Louis County's Motion for Summary Judgment, Doc. [242], is **GRANTED.**

**IT IS FINALLY ORDERED** that this case is set for trial on **Monday, September 26, 2022**, at **9 am**, in Courtroom 16N.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 16th day of August, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE